SOUTHWICK, P.J.,
for the Court:
¶ 1. Nomdray Stokes was found guilty of capital murder by a Harrison County jury and received a life sentence. Stokes appeals on the sole basis that his constitutional right to a speedy trial was violated. *454 We find that Stokes’s argument is without merit and affirm the conviction.
FACTS
¶2. Nomdray Stokes and three other men were indicted for capital murder in the death of Eugene Daniels. The underlying felony in this crime was robbery. Stokes and the others forced their way into Daniels’s apartment on October 28, 1993, where they sought drugs and money. During the course of the robbery, Daniels jumped on the back of one of the men and began to choke him. Stokes and another co-indictee each fired a shot from their handguns at Daniels, killing him.
¶ 3. On October 1, 1996, an arrest warrant was issued for Stokes, who at that time was incarcerated in Rankin County on an unrelated charge. Stokes was told that Detective Newman of the Biloxi Police Department was going to arrest him at the Rankin County facility. However, it appears that Newman never made the trip, and Stokes was never formally arrested.
¶ 4. A grand jury indictment for capital murder was returned against Stokes on May 28, 1997. Counsel was appointed at this time. On June 26,1997, Stokes’s original attorney, Ed Ellis, was replaced by Michael Cox. Stokes was arraigned on September 12,1997.
¶ 5. On December 12,1997, Stokes’s case was set for trial on April 28, 1998. Because of a conflict of interest, Michael Cox was replaced as Stokes’s attorney by Tom Musselman on December 23, 1997. On January 12, 1998, Musselman withdrew as Stokes’s attorney because of a conflict and was replaced by Holt Montgomery.
¶ 6. Stokes was granted a continuance on March 26, 1998, which postponed his trial date until September 14, 1998. On April 8, 1998, Montgomery withdrew as ^tokes’s counsel and was replaced by Jim ■pvis. Davis in turn was replaced by ■tokes’s counsel at trial and for this ap-■oeal, Tom Sumrall, on June 9, 1998. Mel-ará Cooper was appointed co-counsel on August 11, 1998. Stokes filed his motion to dismiss because of violation of his right to a speedy trial on September 2, 1998, not quite two weeks prior to trial. The motion was denied and Stokes was convicted.
DISCUSSION
¶ 7. The sole question presented is whether Stokes’s constitutional right to a speedy trial was violated. The starting date to measure delay under a person’s Sixth Amendment guarantee of a speedy trial is when that person was “accused.” This can be an arrest, an indictment, or any formal charge, whichever is the first to occur. United States v. Marion, 404 U.S. 307, 313-15 & 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) (stating arrest or formal charges begin speedy trial period); Doggett v. United States, 505 U.S. 647, 654-55, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (stating indictment six years before arrest started speedy trial considerations).
¶ 8. Stokes was not indicted until May 28, 1997. Seven months earlier on October 1, 1996, an warrant for Stokes’s arrest was issued as a result of this murder. At that time Stokes was already incarcerated because of a different offense. At that time he received notice that a warrant existed and that a detective was coming to make the arrest. In addition, Stokes was taken out of the general prison population and placed in a more restrictive confinement to await his arrest. For whatever reason, the detective did not travel from Biloxi to Rankin County and formally place Stokes under arrest. In fact, it does not appear that Stokes was ever arrested for this crime. There is no evidence that he would have been released from Rankin County incarceration prior to the May 1997 indictment but for the unserved arrest warrant.
¶ 9. The first question then is whether the speed at which Stokes was brought to trial should be measured from the early October 1996 warrant or from the late May 1997 indictment. Pre-aceusa-tory delay is not subject to speedy trial *455 considerations. Either an arrest or formal charges must exist. Marion, 404 U.S. at 313-15, 92 S.Ct. 455. Stokes was not indicted until May 1997 and was not arrested since his liberty was already restrained due to other alleged crimes. We are called upon to decide whether the issuance of an arrest warrant without serving it and the apparent change in custodial conditions that resulted from the Rankin County authorities’ becoming aware of the warrant is enough to commence the constitutional speedy trial analysis in October 1996.
¶ 10. As already discussed, the existence of an indictment or information charging a defendant with a crime is an accusation sufficient to start speedy trial considerations. An arrest warrant itself, without its being served, has never in our review of the precedents been declared an “accusation” for Sixth Amendment purposes. An unserved arrest warrant, issued because a statutorily empowered magistrate determines that probable cause for the arrest exists, does not formally initiate criminal proceedings or create other effects on a person’s liberty interests. Once a person is arrested or formally charged without arrest, the prosecutorial machinery of the State has created an adequate accusation for speedy trial issues to become relevant, but not before then.
¶ 11. We acknowledge that Stokes was not at liberty even though the warrant was unserved. It was due to other charges, though, that Stokes remained in a Rankin County penal facility. Looking at the offense of murder for which he was convicted and then has appealed here, that offense caused the issuance of a warrant. Notification of officials at the Rankin County Sheriffs Department of the arrest warrant caused them to place Stokes in a more restrictive environment.
Other courts have found that an increase in restrictions of incarceration is not the equivalent of an “arrest” for speedy trial rules. One court stated that this view was “unanimous”:
The question before us is whether placement in administrative segregation should be treated as an arrest for speedy trial purposes. The courts are unanimous in holding that it should not. United States v. Mills, 704 F.2d 1553, 1556-57 (11th Cir.1983), cert. denied, 467 U.S. 1243, 104 S.Ct. 3517, 82 L.Ed.2d 825 (1984); United States v. Daniels, 698 F.2d 221, 223 (4th Cir.1983); Mills, 641 F.2d at 787; United States v. Blevins, 593 F.2d 646, 647 (5th Cir.1979) (per curiam); United States v. Bambulas, 571 F.2d 525, 527 (10th Cir.1978) (per curiam); United States v. Clardy, 540 F.2d 439, 441 (9th Cir.), cert. denied, 429 U.S. 963, 97 S.Ct. 391, 50 L.Ed.2d 331 (1976). These cases refuse to equate administrative segregation with arrest because the consequences of administrative segregation are different from those of arrest.
United States v. Mills, 810 F.2d 907, 909 (9th Cir.1987). All of these cases concern defendants who committed a crime while incarcerated, usually against another inmate. They were then placed in more restrictive confinement pending proceedings on the offenses. The courts all rejected the defendants’ contentions that speedy trial requirements began once restrictions were increased. The United States Supreme Court referred to these conclusions without indicating any disagreement. United States v. Gouveia, 467 U.S. 180, 190, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984) (stating that various federal circuit courts have “held that the segregation of an inmate from the general population pending criminal charges does not constitute an ‘arrest’ for purposes of the speedy trial right.”).
¶ 12. The rule distinguishes segregation within a prison from “the onset of the accusatory phase” because prison administrative decisions are an “internal disciplinary measure that is totally independent from the criminal processes of arrest and prosecution.” United States v. Mills, 704 F.2d 1553, 1556-57 (11th Cir.1983).
*456 ¶ 13. Since Stokes was already incarcerated on other charges, and since there is no evidence here that the confinement was extended to the date of the capital murder indictment because of issuance of an arrest warrant, we conclude that the date to begin measuring the delay in bringing him to trial is May 28, 1997, when the grand jury issued an indictment. As the remainder of our discussion indicates, though, when the relevant period began is not controlling in this case.
¶ 14. Having established the starting point, we turn to the balancing test enumerated in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The Barker court’s four factors to consider are (1) the length of the delay, (2) the reason for the delay, (3) the defendant’s assertion of his right to a speedy trial, and (4) the prejudice resulting to the defendant. Id. at 530, 92 S.Ct. 2182. The weight given each factor necessarily turns on the peculiar circumstances of each case, the quality of evidence available on each factor and, in the absence of evidence, identification of the party with the risk of non-persuasion. Jaco v. State, 574 So.2d 625, 630 (Miss.1990). In its balancing, the trial court’s conclusion will not be reversed unless manifestly wrong. Walters v. Patterson, 531 So.2d 581, 583 (Miss.1988).

1. Length of Delay

¶ 15. This factor is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Barker, 407 U.S. at 530, 92 S.Ct. 2182. Even using the May 28, 1997 starting point, there was well over fifteen months that elapsed from the initiation of the criminal justice process until Stokes’s trial began on September 14,1998. There is a presumption of prejudice that arises when there has been a delay of eight months or more. Jenkins v. State, 607 So.2d 1137, 1139 (Miss.1992). Further evaluation is therefore required.

2. Reason for the Delay

¶ 16. Stokes had five attorneys appointed to represent him over the course of these fifteen months. The proffered explanation for this continual shuffle of attorneys was the somewhat complex nature of this case. The crime here involved multiple defendants, all of whom were required to have counsel appointed for them. In addition, each defendant required separate counsel. This caused conflicts to arise with several of Stokes’s attorneys, necessitating their withdrawal and replacement. This problem is one that in part may be attributed to the shortage of attorneys available to represent indigent defendants. It should not weigh heavily if it is unavoidable.
¶ 17. The supreme court has concluded that if the State consciously provides counsel who are expected not to be able to serve, including appointing counsel for several accused with an expected conflict of interest later to be declared, or contributes to their withdrawal without good reason which delays the trial, then some of this delay can be assigned to the State. Jaco, 574 So.2d at 630-31. However, there is nothing in the record to suggest that the revolving door of attorneys here was due to bad faith by the prosecution.
¶ 18. There is nothing in the record that suggests that Stokes caused or was otherwise at fault for the multiple changes of attorneys here. Accordingly, the time here cannot be counted against him. Conversely, the record contains not the slightest hint of bad faith or deliberate delay on the part of the prosecution. This prevents this factor from being weighed against either party. See Barker, 407 U.S. at 531, 92 S.Ct. 2182; Saxton v. State, 394 So.2d 871, 875 (Miss.1981).
¶ 19. Some parts of the delay were due to Stokes. He moved for a continuance which postponed trial from April 1998 to September 1998. It appears that the State had been ready to proceed.
*457 ¶ 20. The trial court began its analysis from the October 1, 1996 issuance of an arrest warrant, a conclusion with which we have disagreed. The court found that the entire 714 days between the issuance of the arrest warrant and trial was neutral under Barker, with the exception of the delay caused by Stokes’s motion for continuance. We find no fault with the trial court’s ultimate determination. The delays here were for acceptable reasons.

3. Defendant’s Assertion of His Right to a Speedy Trial

¶21. Stokes’s motion to dismiss was filed on September 2, 1998, some ten days before his trial was scheduled to begin. A defendant’s failure to assert his right to a speedy trial until near the time of trial weighs against him, but is not itself conclusive. Smith v. State, 550 So.2d 406, 409 (Miss.1989).
A Prejudice to the Defendant
¶ 22. The Barker court expressly held that there are three interests that the right to a speedy trial protects: (1) deterring oppressive pretrial incarceration, (2) decreasing anxiety and concern, and (3) limiting the likelihood that the defense will be prejudiced. Barker, 407 U.S. at 532, 92 S.Ct. 2182. An affirmative showing of prejudice is not necessary in order to prove a denial of the constitutional right to a speedy trial. Flores v. State, 574 So.2d 1314, 1323 (Miss.1990).
¶ 23. Taking the interests in turn, the prosecution effectively showed that Stokes’s interests were not prejudiced by this delay. First, there' was no evidence of any anxiety or concern on the part of Stokes during this delay. Second, there was no evidence that Stokes’s defense was impacted in any manner because of the delay. We can find no basis for believing that Stokes suffered any evidentiary or tactical disadvantage by reason of the delay. Thus as the trial court found, the State has effectively shown that Stokes did not suffer any prejudice from this delay.
¶ 24. Most of the delay was attributable to the crowded court docket of Harrison County and the “revolving door” of attorneys appointed to Stokes. Under these circumstances, we hold that Nomdray Stokes has not suffered a deprivation of his right to a speedy trial.
¶ 25. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE BENEFIT OF PROBATION OR PAROLE IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.