872 So.2d 713 (2004)
Willie Lee MARTIN a/k/a Firetruck a/k/a Truck, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01160-COA.
Court of Appeals of Mississippi.
May 4, 2004.
*716 Daniel M. Weir, Jeffery P. Reynolds, Jackson, Benjamin Zachary Wise, attorneys for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before KING, C.J., THOMAS and MYERS, JJ.
KING, C.J., for the Court.
¶ 1. Willie Lee Martin was found guilty of capital murder by the Circuit Court of the First Judicial District of Hinds County. He was sentenced to life imprisonment without the possibility of parole in the custody of the Mississippi Department of Corrections. Aggrieved, Martin has appealed and raised the following issues which are cited verbatim:
I. The jury verdict was contrary to the overwhelming weight of the evidence.
II. The Appellant was denied his constitutional right to a speedy trial.
III. The lower court erred in not allowing defense counsel to inquire into Francis [sic] Diane Coleman's prior armed robbery conviction.
IV. The trial court erred in permitting the in-court identification of the Appellant after an improperly suggestive station-house lineup.
V. The Appellant was denied a fair trial due to trial counsel's inability to cross[-]examine or rebut the State's evidence regarding the corpus delecti.

VI. The court erred in failing to grant the Appellant a peremptory instruction at the close of the State's case on the ground that the corpus delecti had not been proven beyond a reasonable doubt.
VII. The trial court denied the Appellant the basic and fundamental right to confront the witnesses against him as well as the right of cross-examination when it permitted the introduction of the testimony of Dr. Hayne, the state pathologist.
VIII. The Appellant's right to a fair trial was presumptively prejudiced when the trial court allowed the jurors to use notes taken during the trial during deliberations.
IX. The lower court erred when it denied Appellant's motion for a new trial.

*717 FACTS
¶ 2. At trial, Frances Diane Coleman, a co-defendant, testified that on the evening of November 6, 1994, she and Martin picked up Robert Charles Jones and drove to a pool hall operated by Steve Steverson on Moonbeam Street in Jackson. According to Coleman, Jones and Martin went to the door of the pool hall. Steverson came to the door and Jones put a gun to Steverson's back and walked him to the car. Coleman stated that Martin drove the car; she was on the front passenger seat; and Jones and Steverson were on the back seat.
¶ 3. Coleman testified that Martin told Steverson that he was going to straighten him out about his money. Steverson owed Martin $100. Steverson told Martin that he did not have the money but that he could go to his mother's house (Millie R. Steverson) to get some money. Martin proceeded to Mrs. Steverson's house. Upon arrival, Martin told Coleman to go to the door and tell Steverson's mother that her son owed him $100 and that he would be killed if she did not give him the money. Steverson's mother came out to the car where Jones was "beating her son with a gun." She begged for her son's life and indicated that she would try to get the money.
¶ 4. At this time, Steverson's sister, Millie O. Steverson, was walking home and saw her mother talking to some people in a car. She testified that she recognized her brother's voice coming from the back seat, but she never actually saw him. Martin told her that Steverson would be killed if they did not come up with $100. Steverson's sister told Martin that she would make a phone call and get the money. Initially, Martin agreed and instructed Coleman to go with Steverson's sister to make sure that she did not call the police. Martin then changed his mind, instructed Coleman to get back in the car, and drove off.
¶ 5. According to Coleman, Martin drove them to a house on Carol Drive in Jackson. Coleman went inside the house where she remained for approximately ten minutes while Martin, Jones, and Steverson remained outside. Coleman then went outside where she saw Martin and Jones beating Steverson. She testified that Jones was hitting Steverson in the head with a brick while Martin was kicking him in the body. Coleman told Martin that "you all need to stop. [Y]ou're gonna end up killing him, and he told me to go back inside of the house." Coleman further testified that Martin and Jones then put Steverson in the trunk of the car. Coleman stated that Steverson appeared to be unconscious.
¶ 6. According to Coleman, Martin drove them to a bridge where he and Jones got Steverson out of the trunk, took his clothes off, and threw him off the embankment. Coleman stated that Martin said that "he was going to make an example out of Steve." Coleman then heard a gunshot, but did not see Martin shoot Steverson. When Martin and Jones came back to the car, Martin drove them to another bridge where he gave Coleman the gun and told her "to throw it in the creek."
¶ 7. On February 15, 1995, Coleman voluntarily turned herself in to the Jackson Police Department and gave a statement describing the events surrounding Steverson's death. Coleman was originally charged with capital murder but subsequently accepted a plea bargain, and pled guilty to kidnapping in exchange for her testimony against Martin and Jones.
¶ 8. On March 17, 1995, Johnny Taylor of the Jackson Police Department received a call regarding blocked traffic on Beasley Road. When he arrived at the scene an individual approached him and said "that he thought he had found a body in a *718 creek" on Watkins Drive. Officer Taylor arrived at the location and saw what appeared to be the upper portion of a leg bone on top of a water pipe and a portion of a hand on the embankment. The parts recovered included "the right arm, shoulder blade, a portion of the rib cage on the right side, hips and both legs." Two days later, a partial skull was found "approximately a half to three-quarters of a mile west" of where the body was located. Although no DNA testing was performed, Dr. Steven Hayne, a forensic pathologist, testified that "with reasonable medical certainty it's consistent that the skull went with the lower torso." Dr. Hayne also indicated that he observed a tattoo with the initials "S.S." on the right arm of the body. Steverson's mother testified that her son had a tattoo with "two arrows, two hearts and the initial[s] SS on his arm."
¶ 9. Martin was convicted of capital murder and was sentenced to life imprisonment without parole.

ISSUES AND ANALYSIS
¶ 10. Issues one and nine are interrelated and have therefore been addressed together.

I.

Whether the verdict was against the overwhelming weight of the evidence.
¶ 11. Martin asks that the verdict be set aside and he be granted a new trial because the verdict was contrary to the overwhelming weight of the evidence. Martin asserts that the State's case "relied heavily on hearsay testimony and questionable opinion evidence." He also claims that the State's case was based on "inferences and presumptions."
¶ 12. Martin maintains that jurors were required to presume that he was in the car the night Steverson disappeared. He further argues that jurors were required to presume that Coleman had no incentive to lie about his presence or role in the incident. Martin claims to be only guilty of "assault" if Coleman's testimony is to be believed. Martin asserts that jurors would have to presume that he "had no alibi when, in reality, his alibi witnesses had passed away while he awaited trial."
¶ 13. Our standard of review for claims that a judgment is against the overwhelming weight of the evidence is as follows:
In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. As such, if the verdict is against the overwhelming weight of the evidence, then a new trial is proper.
Baker v. State, 802 So.2d 77(¶ 14) (Miss. 2001).
¶ 14. The State presented Coleman's testimony which described the events and identified the persons involved in this matter. However, Martin argues that Coleman's testimony about his role in the matter is not accurate. Any factual disputes are to be properly resolved by the jury and do not mandate a new trial. Benson v. State, 551 So.2d 188, 193 (Miss.1989). The jury is the sole judge of the credibility of witnesses, and the jury's decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict. Billiot v. State, 454 So.2d 445, 463 (Miss.1984).
*719 ¶ 15. Having reviewed the record, we find that the jury's verdict was not against the overwhelming weight of the evidence and does not warrant a new trial. This Court finds that this issue is lacking in merit.

II.

Whether Martin was denied his right to a speedy trial.
¶ 16. Martin's attorneys did not make a request for a speedy trial. However, Martin filed a pro se motion to dismiss on December 31, 1997, where he raises the issue of his right to a speedy trial. On pro se petitions, we may give an individual the benefit of the doubt in considering a request for a speedy trial, Myers v. State, 583 So.2d 174, 176 (Miss.1991), even where we have done so, we still require that some effort be made to pursue the request, otherwise the argument will be considered waived. Jones v. State, 776 So.2d 643(¶ 17) (Miss.2000).
¶ 17. In his brief, Martin gives the following chronology of events:

 Date Event
10/19/95 indicted
06/17/96 arrested
07/02/96 arraigned
01/18/00 trial

¶ 18. Barker v. Wingo, 407 U.S. 514, 530-33, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) identified four factors which are to be considered in determining whether the right to a speedy trial has been denied: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant has asserted his right to a speedy trial, and (4) whether the defendant has been prejudiced by the delay. No one factor is dispositive; rather, they must be considered together on a case by case basis.
¶ 19. Martin claims that he was incarcerated "for a period of at least 542 days from the date of arrest and 512 days from the date of arraignment, with no continuance entered" on his behalf. A party claiming the denial of a right to a speedy trial is obligated to place before the court sufficient information to establish that he was denied a speedy trial and suffered prejudice as a result of that denial. Jones v. State, 776 So.2d 643 at (¶ 17). This information should include the reasons for delay in trial and to whom the delays are attributed. In the absence of some indication of the reason for delay, this Court has no way of attributing the delay to the State or defense. Where information regarding delays is absent in the record, it prevents this factor from being weighed against either party, unless there has been an egregious action by the State. Stokes v. State, 758 So.2d 452(¶ 18) (Miss.Ct.App.2000). The record indicates that several continuances were granted, but does not indicate which party requested the continuances or why they were granted. Because the State has the obligation to bring the defendant to trial, under these facts we weigh the delay ever so slightly against the State.
¶ 20. Martin claims prejudice from the death of an alibi witness. This Court cannot decide an issue based on assertions in the briefs alone; rather, issues must be proven by the record. Medina v. State, 688 So.2d 727, 732 (Miss.1996). On December 31, 1997, Martin filed a motion to dismiss. In that motion, Martin claims that the failure to provide him with a speedy trial was one of the reasons he could not utilize an alibi witness who died prior to trial. In his motion, Martin did not specifically state to what the alibi witness would have testified. He merely stated that he had an aunt who could confirm his whereabouts on the days in question. On October 1, 1998, an order was entered denying Martin's motion to dismiss. *720 While Martin claims that because of the delay in his trial an alibi witness is now deceased which impaired his defense; without greater specificity, Martin has failed to show actual prejudice which resulted from the delay. Walton v. State, 678 So.2d 645, 650 (Miss.1996). This issue is without merit.

III.
Whether the trial court erred in not allowing defense counsel to inquire into Coleman's prior armed robbery conviction.
¶ 21. Martin claims that his attorneys were not allowed to delve into Coleman's prior armed robbery conviction during pretrial motions.
¶ 22. The State made a motion in limine to prevent Martin from eliciting information about Coleman's prior convictions. The prior convictions were armed robbery and drug convictions. The State argued that the convictions were not probative of the truth and veracity of the witness's testimony. The State also argued that the robbery conviction was more than ten years old. The trial court determined that there was no compelling reason to allow the convictions to be presented to the jury. The trial court noted that the exclusion of this information was upheld in the co-indictee's case and would therefore be excluded in this matter. Jones v. State, 776 So.2d 643 (¶ ¶ 27, 28) (Miss.2000).
¶ 23. Mississippi Rule of Evidence 609(a)(b)[1] addresses impeachment by prior convictions. If more than ten years have elapsed since the date of the conviction, the court must determine that the probative value of the conviction substantially outweighs its prejudicial effect and the proponent must give advance written notice of intent to the adverse party that such evidence will be used. Id. In the present case, the trial court accepted the State's argument that the prior convictions were not probative of the truth and veracity of the witness's testimony. This Court does not find that the trial court's exclusion of Coleman's prior armed robbery conviction was an abuse of discretion.

IV.
Whether the trial court erred in permitting the in-court identification of Martin after an improperly suggestive station-house line-up.
¶ 24. Martin made a motion to suppress the out-of-court and in-court *721 identification of him by Millie O. Steverson alleging that the photographic identification testified to by Millie O. Steverson was impermissibly suggestive and that her subsequent in-court identification should not have been admitted. He claims that the "photo spread was overly suggestive and that any evidence of identification purported to Millie O. Steverson would be tainted." Martin asserts that his photograph was the only photograph of the eight photos presented to Ms. Steverson which had a ponytail, and by including only one photograph where a suspect had a ponytail, the photo line-up was impermissibly suggestive.
¶ 25. The State responded to Martin's objection as follows:
BY MR. COLLINS: Millie O. Steverson is here. It's the State's belief that she can independently identify him outside of the lineup. I believe to save time it would be better that just before she's called this afternoon, we take a few minutes to go into that part of it and then do it. If she cannot identify him, then her testimony would still be relevant and be permissible even though she could not identify him. If she can identify him, then obviously we go forward from that stage, so my suggestion is that we just take a moment at that time and identify.
On direct examination, the State asked Millie O. Steverson whether she recognized the driver of the car to which she said "yes" and identified Martin.
The admission of evidence rests within the discretion of the trial court. A court must consider five factors in evaluating the validity, reliability and admissibility of identification testimony: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty exhibited by the witness at the confrontation; and (5) the time between the crime and the confrontation.
The standard of review for suppression hearing findings concerning pretrial identification is "whether or not substantial credible evidence supports the trial court's findings that, considering the totality of the circumstances, in-court identification testimony was not impermissibly tainted.... The appellate review should disturb the findings of the lower court `only where there is an absence of substantial credible evidence supporting it.'"
Horne v. State, 825 So.2d 627 (¶ ¶ 31-32) (Miss.2002) (citations omitted).
¶ 26. Having reviewed the record, this Court finds no abuse of discretion in the admission of the evidence presented in this issue.

V.

Whether Martin was denied a fair trial due to defense counsel's inability to cross-examine or rebut the State's evidence regarding the corpus delecti.

¶ 27. Martin contends that the State failed to preserve the skull or a tissue sample for subsequent DNA analysis comparison to the torso. In making this allegation, Martin relies on Banks v. State, 725 So.2d 711(¶ 11) (Miss.1997), where the supreme court noted that the State's duty to preserve evidence is limited to evidence which plays a significant role in the defense of a matter. The significance of the evidence must be apparent prior to destroying the evidence. Id. Additionally, to play a significant role in the defense, comparable evidence must not be obtainable by reasonable means. Id.
¶ 28. Dr. Steven Hayne stated that he did not perform a DNA analysis, but material *722 was retained to perform a DNA analysis. Dr. Hayne also indicated that at that time, the entire skull was turned over to the coroner. Dr. Hayne's testimony indicates that an analysis of the tissue from the torso could have been obtained even without the complete skull and torso.
¶ 29. With reference to the skull and torso, unless Martin can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law. Wilson v. State, 574 So.2d 1324, 1329 (Miss. 1990). The record does not show proof of bad faith. Therefore, this contention lacks merit.

VI.

Whether the trial court erred in failing to grant Martin a peremptory instruction on the ground that the corpus delicti had not been proven beyond a reasonable doubt.
¶ 30. Martin argues that the State failed to prove each element of corpus delicti beyond a reasonable doubt. He asserts that the skull and torso were not conclusively matched to prove the identity or cause of death.
¶ 31. The corpus delicti which the State must show in a homicide case consists of (1) the death of a human being, and (2) a criminal agency causing the death. Hopson v. State, 615 So.2d 576, 579 (Miss.1993). The law does not require an autopsy or medical evidence to establish death. Miskelley v. State, 480 So.2d 1104, 1107 (Miss.1985). These facts are ordinarily proven by witnesses who saw the deceased after his death and testified that the deceased was dead. Id. "The criminal agency or cause of death is usually shown by witnesses who saw the homicide, or by circumstances sufficient to establish the crime to the exclusion of every other reasonable hypothesis." Id.
¶ 32. In this matter, the State offered Coleman's testimony that she saw Martin and Jones kicking and beating the victim. Coleman indicated that she warned Martin to stop beating Steverson because he and Jones would end up killing him. According to Coleman, Martin instructed her to get some newspaper to put in the trunk of the car, and Martin and Jones picked up Steverson and put him in the trunk. Coleman stated that they drove over a bridge where Martin and Jones took off Steverson's clothes and threw him over the embankment. Martin then indicated that he was going to make an example out of Steverson, after which Coleman stated that she heard a gunshot. The State offered Coleman's testimony describing the events from Steverson's abduction until his presumptive death.
¶ 33. The State also presented testimony from Steverson's mother and sister, who identified Steverson's tattoo from photographs of the recovered torso.
¶ 34. Dr. Hayne testified that the manner of death was homicide.
¶ 35. Based on the evidence presented, we cannot say that the trial court erred in denying Martin's instruction that the corpus delicti had not been proven beyond a reasonable doubt.

VII.

Whether the trial court denied Martin his fundamental right to confront witnesses against him.
¶ 36. Martin alleges that Dr. Hayne, the forensic pathologist in this matter, "improperly consulted with and relied upon the opinions of forensic anthropologist, Dr. Ed Waldrup." Martin maintains that this reliance prevented him from confronting and cross-examining Dr. *723 Waldrup. Dr. Hayne stated that while Dr. Waldrup was present when he performed the autopsy and agreed with his conclusions, he reached his conclusions independently. Dr. Hayne also stated that his determinations were within the field of forensic pathology.
¶ 37. Based on a review of the record, this Court finds no violation of Martin's fundamental right to confront witnesses as he suggests.

VIII.
Whether the trial court erred by allowing jurors in deliberations to use notes taken during trial.
¶ 38. Martin argues that allowing the jurors to take notes and use their notes during deliberations was prejudicial to his case. Martin cites Wharton v. State, 734 So.2d 985(¶ 23) (Miss.1998), where the supreme court held that "juror notes are permissible, but should not be allowed to be taken by that juror into the jury room during deliberations."
¶ 39. In this matter, a juror asked the trial judge whether note-taking would be allowed. The trial judge responded by indicating that he would allow the jurors to take notes but that the notes would be allowed for the specific use and reference of the juror writing the notes. The trial judge indicated that the notes would not be binding on any other juror.
¶ 40. The trial court gave instruction C-6 regarding the notes taken by the jurors. Instruction C-6 states:
I have observed that some of you have been taking notes throughout the trial. It is proper and permissible under our law for jurors to take notes; however, they are to be used only by the juror who takes them as an aid to his or her memory, because each of you must recall the testimony as best you can. The notes are not binding on other jurors and should not be used as authoritative records to show other jurors, but only as an aid to the memory of the person who took them.
When this instruction was given, no objection was made by the defense. Had there been a contemporaneous objection to this instruction, it would have been considered an error at that time. The failure to make a contemporaneous objection to a jury instruction waives this issue for the purposes of appeal. Smith v. State, 724 So.2d 280 (¶ 143) (Miss.1998). A trial judge will not be found in error on a matter not presented to him for decision. Id. Additionally, Lentz v. State, 604 So.2d 243, 249 (Miss. 1992), states that even where error has occurred, we will not reverse a conviction when the overwhelming weight of the evidence supports the guilty verdict.
¶ 41. However, Uniform Circuit and County Court Rule 3.14, adopted effective April 18, 2002, grants the trial court the discretion to allow note-taking by jurors and their use in deliberation. This should be considered harmless error.
¶ 42. This Court finds the error to be harmless and affirms the trial court's decision.
¶ 43. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE WITHOUT PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
BRIDGES, P.J., THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. SOUTHWICK, P.J., NOT PARTICIPATING.
NOTES
[1] Mississippi Rule of Evidence Rule 609(a)(b) provides: (a) General Rule. For the purpose of attacking the credibility of a witness,

(1) evidence that (A) a nonparty witness has been convicted of a crime shall be admitted subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and (B) a party has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the party; and
(2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of punishment.
(b) Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by the specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.