GRIFFIS, J.,
for the Court.
¶ 1. Johnny Johnson was convicted of felony shoplifting and sentenced to serve four and one half years in the custody of the Mississippi Department of Corrections. The trial court denied Johnson’s motion for a new trial, and Johnson perfected his appeal. Finding no error, we affirm.
FACTS
¶ 2. On December 6, 2002, Johnny Johnson entered Lee’s Factory Outlet in Phila *787 delphia, Mississippi. Johnson was observed wandering around the store by two employees, Lisa Callahan and April Smith. Callahan and Smith testified that shortly after entering the store, Johnson grabbed an armful of clothing and bolted out of the door.
¶ 3. Callahan pursued Johnson with the help of several construction workers and Angie Tullos, the manager of a neighboring store, The Clothes Line. Tullos testified that she went in the opposite direction of the other pursuers and literally ran into Johnson, but was unable to stop him. However, Tullos did get a good look at Johnson’s face.
¶ 4. Jim Harbaugh also testified that he saw Callahan pursuing Johnson and tried to help her. Harbaugh testified that he saw Johnson jump into the back seat of a parked car with an armload of clothing. When Harbaugh approached the vehicle, Johnson jumped out, leaving the clothing in the car, and ran away. Harbaugh made an in court identification of Johnson and testified that he was face-to-face with Johnson when Johnson jumped out of the car.
¶ 5. Soon after Harbaugh’s encounter with Johnson, the police were called and the stolen clothing was recovered. The retail value of the stolen clothing was $291.98.
¶ 6. Later that day, a police officer came to Lee’s Factory Outlet with a single photograph of Johnson. Callahan and Smith identified the man in the picture as the same man who had stolen the clothing that morning. Callahan testified that she did not know Johnson’s name, but that she recognized him because he was a regular customer. Smith also testified that she recognized Johnson but did not know his name. Both Callahan and Smith testified that they had seen Johnson in the store numerous times and recognized him when he stole the clothes that morning.
¶ 7. The police officer also went to The Clothes Line and showed Johnson’s picture to Tullos. Tullos identified Johnson as the man that she had pursued that morning. Tullos testified that she recognized Johnson from being a customer in her store and from their encounter that morning.
¶ 8. At trial, Johnson was convicted of felony shoplifting and sentenced to serve four and one half years in the custody of the Mississippi Department of Corrections. On appeal, Johnson asserts that the trial court erred in admitting the identification testimony of Callahan and Smith.
STANDARD OF REVIEW
¶ 9. When reviewing a trial court’s findings regarding a pretrial identification which the defendant seeks to suppress, we consider “whether or not substantial evidence supports the trial court’s findings that, considering the totality of the circumstances, in-court identification testimony was not impermissibly tainted,” and we will disturb the findings of the lower court “only where there is an absence of substantial credible evidence supporting it.” Brooks v. State, 748 So.2d 736, 741 (¶ 26) (Miss.1999).
ANALYSIS
¶ 10. Johnson asserts that the trial court erred in denying his motions to suppress the identifications of Johnson as the shoplifter made by Callahan and Smith. Johnson asserts that these identifications were admitted in error because they were procured by the police officer showing the witnesses a single photograph, rather than an array of photographs. Johnson cites no Mississippi authority for this proposition nor does Johnson attack the admission of *788 identification testimony by witnesses Tul-los and Harbaugh.
¶ 11. The admission of evidence rests within the discretion of the trial court. Martin v. State, 872 So.2d 713, 721 (¶ 25) (Miss.Ct.App.2004). It has long been established what the appropriate standards of review are for allegedly improper identifications. The Mississippi Supreme Court has held that:
Only pretrial identifications which are suggestive, without necessity for conducting them in such a manner, are proscribed. A lineup or series of photographs in which the accused, when compared with the others, is conspicuously singled out in some manner from the others, either from appearance or statements by an officer, is impermissibly suggestive.
An impermissibly suggestive pretrial identification does not preclude in-court identification by an eyewitness who viewed the suspect at the procedure, unless (1) from the totality of the circumstances surrounding it (2) the identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.
Brooks v. State, 2001-KA-01826-COA, — So.2d — (¶ 7) (Miss. June 29, 2004) (citing York v. State, 413 So.2d 1372, 1383 (Miss.1982)). A court must consider five factors in evaluating the substantial likelihood of an irreparable misidentification: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness’ degree of attention; (3) the accuracy of the witness’ prior description of the criminal; (4) the level of certainty exhibited by the witness at the confrontation; and (5) the time between the crime and the confrontation. Martin, 872 So.2d at 721 (¶ 25).
¶ 12. Callahan and Smith testified that Johnson was inside the store for approximately fifteen minutes before he fled with the stolen clothing. This was ample opportunity for the witnesses to observe Johnson. Both Callahan and Smith testified that, at the time Johnson entered the store, they recognized him even though they were unsure of his name. The record shows that both Callahan and Smith were familiar with Johnson because he was a frequent customer of Lee’s Factory Outlet.
¶ 13. Callahan and Smith gave an accurate description of Johnson to those who assisted in the pursuit. Both witnesses were also certain that the man in the picture shown to them by the police was the same man who had been in the store. Furthermore, Callahan and Smith both testified that they identified Johnson as the shoplifter based on their familiarity with him rather than because his was the only photograph shown to them by the police. Even if this Court were to find that the photo identification was suggestive, which we do not given the familiarity of the witnesses with Johnson, we still find that the identifications of Johnson, made in court by Callahan and Smith, were reliable. Based on the witnesses’ opportunity to view Johnson immediately after the crime, their degree of attention, and the level of certainty demonstrated by the witnesses at both the confrontation and finally the trial, there was more than substantial credible evidence to hold the in-court identification of Johnson positive. Under the totality of the circumstances, there was far from a substantial likelihood of irreparable misidentification. Therefore, the trial court did not commit error in allowing the in-court identification of Johnson.
¶ 14. We find that the trial court did not err in admitting the testimony of Callahan and Smith. It is clear from the record that both of these witnesses were *789 familiar with Johnson and were not imper-missibly influenced by being shown a single photograph for identification. Furthermore, even without the testimony of Callahan and Smith, both Tullos and Har-baugh identified Johnson as being the shoplifter. As such, we find that there was substantial credible evidence to support the admission of the testimony at issue, and decline to disturb the findings of the lower court.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF NESHOBA COUNTY OF CONVICTION OF FELONY SHOPLIFTING AND SENTENCE OF FOUR AND ONE HALF YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NESHO-BA COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER AND BARNES, JJ., CONCUR.