994 So.2d 821 (2008)
Curtis Lee WILLIAMS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2007-KA-00143-COA.
Court of Appeals of Mississippi.
April 15, 2008.
Rehearing Denied August 26, 2008.
Certiorari Denied November 20, 2008.
*823 W. Daniel Hinchcliff, Leslie S. Lee, attorneys for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before MYERS, P.J., GRIFFIS and ROBERTS, JJ.
ROBERTS, J., for the Court.
¶1. A jury sitting before the Desoto County Circuit Court found Curtis Lee Williams guilty of burglary of a building and grand larceny. The circuit court found that Williams qualified for sentencing as a habitual offender and sentenced Williams to consecutive sentences of seven years for burglary and five years for grand larceny. On appeal, Williams claims the evidence was insufficient to sustain his grand larceny conviction. Additionally, he claims the photographic lineup by which Tiffany identified him was impermissibly suggestive. Finding no error, we affirm.

FACTS
¶2. The events that led to Williams's conviction occurred at Ralph and Tiffany Tennis's home in Desoto County, Mississippi. Around 8:45 a.m. on Friday, January 14, 2000, Tiffany was upstairs asleep with her baby when she heard a car door close in her driveway. She looked outside and saw a white early 1990s model Buick Regal backed into her driveway. Two men got out of the car. Tiffany went downstairs and looked out her kitchen window. She saw one man, the passenger, go into a storage shed under her carport.
¶3. Tiffany went outside onto her back porch. When she went to the end of her steps, she ended up face-to-face with one of the men as he exited the shed. The man had various tools in his arms. The man ran to the car, threw the tools in the trunk, and got in the passenger side of the car. The two men fled. However, Tiffany was able to memorize the Arkansas license plate number.
¶4. Tiffany called 911. Members of the Desoto County Sheriff's Department responded "within a few minutes." Tiffany *824 described the men and the car, including the exact license plate number. According to Tiffany, one person was a 6'1" to 6'3" black male who weighed 150 to 160 pounds. The other person was a 5'6" to 5'8" black male who weighed 160 to 170 pounds. The Desoto County Sheriff's Department ran the license plate number, contacted the owner of the car, and found out the car had been stolen.
¶5. The next day Officer John Grandberry of the Memphis Police Department was dispatched to a location approximately a mile and a half to two miles from Horn Lake, Mississippi. When Officer Grandberry responded, he saw two black males stripping what appeared to be an abandoned cara white four door 1991 Buick Regal with Arkansas plates. When the two men saw Officer Grandberry, they ran to a nearby tree line. Officer Grandberry, among others, spent about an hour and twenty minutes looking for the two men. One man escaped. The other man Williamswas found lying in a ditch. He had a broken leg.

PROCEDURAL HISTORY
¶6. On February 18, 2000, the Memphis Police Department sent pictures of Williams to Captain Tommy Burkes of the Desoto County Sheriff's Department. Captain Burkes prepared a photographic lineup of six people and asked Tiffany if she could identify anyone. She identified Williams. According to Tiffany, Williams was the man with whom she ended up face-to-face.
¶7. On July 27, 2000, the Desoto County grand jury returned an indictment against Williams and charged him with burglary and grand larceny as a habitual offender. Williams pleaded not guilty and filed an unsuccessful pretrial motion to suppress Tiffany's photographic lineup identification. On October 10, 2006, Williams went to trial before the circuit court. As mentioned, the jury found Williams guilty of both counts.
¶8. After Williams advanced unsuccessful post-trial motions for a judgment not withstanding the verdict (JNOV) or, alternatively, for a new trial, the prosecution presented evidence that Williams had six prior felony convictions between 1990 and 2002. The circuit court concluded that Williams qualified for enhanced sentencing as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev.2007). Accordingly, for count one, the circuit court sentenced Williams to seven years in the Mississippi Department of Corrections (MDOC) as a habitual offender. The circuit court also ordered Williams to pay a $1,000 fine, $100 to the Mississippi Crime Victim's Compensation Fund, $550 restitution, and court costs. Incident to count two, the circuit court sentenced Williams to five years as a habitual offender. The circuit court set count two to run consecutively to count one. Williams appeals.

ANALYSIS

I. WHETHER THE EVIDENCE WAS SUFFICIENT TO CONVICT WILLIAMS FOR GRAND LARCENY.
¶9. On appeal, Williams claims the prosecution presented insufficient evidence to sustain his grand larceny conviction. In considering Williams's contention, we must consider all of the evidence in the light most favorable to the State. May v. State, 460 So.2d 778, 781 (Miss.1984). If there is substantial evidence in the record of such quality and weight that, having in mind the burden of proof beyond a reasonable doubt, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions regarding the guilt of *825 the defendant, we have no authority to disturb the jury's verdict. Id.
¶10. Williams's entire written argument incident to his post-trial motion reads as follows:
Pursuant to applicable law, the Defendant, CURTIS LEE WILLIAMS, respectfully moves the Court to grant a judgement [sic] notwithstanding the verdict (JNOV) and to discharge him, or, alternatively, to grant him a new trial. The basis of the motion is that the finding of the jury was against the overwhelming weight of the evidence, and that based on the facts and evidence introduced at trial, no reasonable jury could have found the Defendant, CURTIS LEE WILLIAMS, to be guilty of the crimes charged.
During the hearing on his post-trial motions, Williams presented the following argument: "we'd ask the [c]ourt to rule simply on the written [m]otions. There's no argument I could present that the [c]ourt hasn't already heard during this trial. We feel that the overwhelming weight of the evidence was against the conviction and ask the [c]ourt to rule as such."
¶11. It is not enough that a defendant moves for JNOV on the basis that the prosecution failed to demonstrate a prima facie case. Davis v. State, 866 So.2d 1107, 1113(¶21) (Miss.Ct.App.2003). A defendant must specifically state just how the prosecution failed to present a prima facie case. Id. Without such specificity, we will not find the circuit court erred when it overruled such a motion. Id. Accordingly, Williams's first issue is procedurally barred.
¶12. Assuming, for the sake of argument, that Williams was not procedurally barred, we would find no merit to this issue. Williams was convicted of grand larceny in violation of the thenapplicable Mississippi Code Annotated section 97-17-41(1)(A) (Rev.1997). As of January 14, 2000, section 97-17-41(1)(a) provided:
Every person who shall be convicted of taking and carrying away, feloniously, the personal property of another, of the value of Two Hundred Fifty Dollars ($250.00) or more, shall be guilty of grand larceny, and shall be imprisoned in the penitentiary for a term not exceeding five (5) years; or shall be fined not more than One Thousand Dollars ($1,000.00), or both.
¶13. The linchpin of Williams's argument centers on the valuation of the stolen property. According to Williams, the evidence against him was insufficient because the property taken was valued in terms of replacement cost rather than fair market value cost. Williams directs our attention to the following testimony of Ralph, Tiffany's husband and the owner of the stolen property. During cross-examination, Ralph testified:
Q. What's the approximate value of everything that was taken?
A. Over $500 I know. I couldn't tell you exactly. $550 or something I think is what I added up.
....
Q. And how did you go about determining the value?
A. Well, basically, you know, knowing what the tools, you know, had cost me.
Q. So is it your testimony that the value is based on what it would have cost you to replace those tools?
A. Yeah. Yes, sir.
Williams relies on Ellis v. State, 469 So.2d 1256, 1259 (Miss.1985) for the proposition that the proper measure of the value of property is the market value of the property at the time and place of the larceny, not the original purchase price.
*826 ¶14. In Smith v. State, 881 So.2d 908 (Miss.Ct.App.2004), a defendant was convicted after the victim's father testified that he paid between $3,000 and $4,000 for truck rims that were later stolen. Id. at 910(¶11). The defendant appealed and claimed it was appropriate to reverse based on insufficient proof of the value of the rims. Id. This Court stated:
We agree, however, with Smith that the prosecution failed to present any direct evidence as to the value of the rims. However, [the victim's father] testified that he paid between three and four thousand dollars for the rims. Although this was not direct testimony of the value of the rims, we find that it circumstantially provided a basis from which the jury could infer that the rims were worth at least $250 because of the amount of the purchase price. While this is not the strongest evidence that could have been, and should have been presented, we cannot say that no fair-minded juror could find Smith guilty on this evidence or that allowing the verdict to stand will amount to an unconscionable injustice.
Id. In Thompson v. State, 910 So.2d 60 (Miss.Ct.App.2005), this Court found that the evidence was sufficient to sustain a conviction for grand larceny where testimony indicated that the value of the stolen desk was more than $250 because it was purchased for substantially more than $250. Thompson, 910 So.2d at 62(¶6). Because the property in question tended not to decline in value, the purchase price of the stolen desk was found to be sufficient evidence to support a grand larceny conviction. Id.
¶15. The date of the theft was January 14, 2000. As of that date, section 97-17-41 penalized a theft in which the value of the property taken had a fair market value of over $250. Ralph testified that he was missing "a top set tool box" or a "top box" with "different trays and drawers." He "couldn't begin" to remember everything that was in that tool box. He could remember that he was missing the following things: "miscellaneous wrenches and screw drivers and things like that, a brand new seven piece Snap-On socket set, hedge trimmers, ... [o]pen end wrenches, extra sockets, tape measures, [and] files." According to Ralph, the seven-piece Snap On socket set cost "around $150." He estimated that the "approximate value" of everything taken was, "[o]ver $500 I know. I couldn't tell you exactly. $550 or something I think is what I added up." He testified that "one set of those open end wrenches" would cost him "2 or $300" if he "went to buy [them] ... today."
¶16. Ralph testified that one seven-piece socket set was newly purchased, and it cost $150. Based on Ralph's testimony regarding the remainder of the stolen items, a jury could reasonably infer that the rest of the tools had a fair market value greater than $100, for a total of over $250. Considering the appropriate standard of review, we must find that there was sufficient evidence to convict Williams.

II. WHETHER THE PHOTOGRAPHIC LINEUP WAS IMPERMISSIBLY SUGGESTIVE.
¶17. Tiffany identified Williams from a photographic lineup prepared by Captain Burkes, with the Desoto County Sheriff's Department. Williams filed a pretrial motion to suppress the lineup. On October 4, 2006, the circuit court conducted a hearing on Williams's motion. Williams argued that the lineup was impermissibly suggestive for multiple reasons, but the circuit court denied Williams's motion.
¶18. According to the circuit court, the lineup was not impermissibly suggestive and would not preclude in-court identification. The circuit court found that *827 Tiffany had "more than ample opportunity to view [Williams] at the time" of the burglary. The circuit court also found that there was a "pretty short" period of time between the confrontation and the identification. The circuit court then stated:
I will note regarding the photographic lineup there were several different pictures. Several of them kind of being different than the others. Two of them being backed up against a height-measuring device appearing to be what I guess you would refer to as a standard mug shot. Certainly, one argument would be that the lineup would have suggested those were the Defendants. One, I believe, had the picture of a face that was cut off just below the chin. To be honest, to the Court, that would have been the most suggestive one to the Court, but I will note also that Mr. Williams, his picturealthough [sic]. I did not note the picture being that extremely different than the other certainly had a white background which appeared to be a lot different than the others.
The Mississippi Supreme Court has been clear about the tough standard in that regard. Certainly, the witnesses may be cross-examined in regard to that. Certainly, the witness would have to make her own in-court identification subject also to cross-examination, but for those reasons, the motion to suppress that evidence will be denied.
Williams claims the circuit court erred.
¶19. "The admission of evidence rests within the discretion of the trial court." Johnson v. State, 882 So.2d 786, 788(¶11) (Miss.Ct.App.2004). Pretrial identifications that are unnecessarily suggestive are prohibited. Id. "A lineup or series of photographs in which the accused, when compared with the others, is conspicuously singled out in some manner from the others, either from appearance or statements by an officer, is impermissibly suggestive." Id. (citation omitted). "[A] photographic array containing pictures of the [defendant] viewed by the victim is not unduly prejudicial unless the [defendant's] photograph is notably different from the remaining photographs or the officer conducting the photo line-up makes some comment suggesting the identification of the assailant." Wilson v. State, 759 So.2d 1258, 1262(¶10) (Miss.Ct.App.2000).
¶20. According to Williams, the lineup was impermissibly suggestive because two of the six pictures included a linear height measurement in the background and those measurements indicated that those individuals were significantly taller than Williams's description. We do not find that the lineup was impermissibly suggestive for this reason. Tiffany saw two people burglarize her shed. She described one person as 6'1" to 6'3" and the other as 5'6" to 5'8". When he presented her with the lineup, Captain Burkes did not specifically ask Tiffany to identify either one of those people. Therefore, the photographic lineup would be much more suggestive if it did not contain pictures of people that fit the description of both people that Tiffany saw.
¶21. Williams also claims that the lineup was impermissibly suggestive because of the four pictures that did not have linear height measurements in the background, three had blue backgrounds while Williams's picture had a white background. Again, we do not find that the lineup was impermissibly suggestive for this reason. Nothing about the background of the pictures singles out Williams. Further, Captain Burkes testified that he chose the pictures of the individuals based on the similarity of their featuresand they are uniformly similar.
*828 ¶22. Next, Williams argues that the photographic lineup was impermissibly suggestive because five pictures were "head shots" while Williams's picture includes the uppermost portion of his chest. The additional portion of Williams's chest is a slight difference at best. It is definitely not suggestive in any way.
¶23. Williams further claims the photographic lineup was impermissibly suggestive because his hair was noticeably shorter than that of the men in the other five pictures. We can discern no distinguishable difference in the length of the men's hair in the photographs.
¶24. Finally, Williams submits that the photographic lineup was impermissibly suggestive because he wore a red jacket in his picture, but none of the other men had on winter clothing. Williams argues that this was particularly suggestive considering that the crime occurred in January. Williams did not make this argument during the hearing on his motion to suppress or at any other point during his criminal proceedings. Therefore, this argument is procedurally barred. Procedural bar notwithstanding, Williams's jacket is not suggestive. When Tiffany described the people she saw, she did not state that either one of them wore a red jacket. Instead, she described one man as having worn a "multicolored jacket" and the other as having worn "a brownish color plaid shirt." Tiffany did not describe the jacket Williams wore in his lineup photograph. Accordingly, there is no merit to this argument.
¶25. In Roche v. State, 913 So.2d 306, 311(¶14) (Miss.2005), the supreme court stated that:
Under Biggers, the factors to be considered in evaluating reliability of identification... include:
the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention; the accuracy of the witness' prior description of the criminal, the level of certainty exhibited by the witness at the confrontation, and the time between the crime and the confrontation.
Id. (citing Neal v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)). Tiffany had a good opportunity to see Williams at the time of the crime. She saw him from multiple anglesthrough her upstairs window, through her kitchen window, and even face-to-face. By Tiffany's testimony, it is reasonable to conclude that Williams had her undivided attention at those times. As for her prior description, Tiffany did not describe any of Williams's features beyond his height, weight, and dress. According to both Tiffany and Captain Burkes, Tiffany was absolutely certain that Williams was the man she saw in her driveway. As the circuit court mentioned, there were approximately two weeks between the theft and the time Tiffany identified Williams in the photographic lineup. Accordingly, the circuit court acted within its discretion.
¶26. Finally, it is noteworthy that Tiffany also identified Williams at trial. An impermissibly suggestive pretrial identification does not preclude in-court identification by an eyewitness who viewed the suspect at the procedure, unless (1) from the totality of the circumstances surrounding it (2) the identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Id. Even if the picture of Williams was slightly suggestive, which we do not find, it was not so suggestive that it gave rise to the likelihood of irreparable misidentification. Therefore, we affirm.
*829 ¶27. THE JUDGMENT OF THE DESOTO COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, BURGLARY OF A BUILDING, AND SENTENCE OF SEVEN YEARS AS A HABITUAL OFFENDER AND COUNT II, GRAND LARCENY, AND SENTENCE OF FIVE YEARS AS A HABITUAL OFFENDER TO RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY $1,000 FINE, $100 TO THE MISSISSIPPI CRIME VICTIMS' COMPENSATION FUND, AND $550 IN RESTITUTION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.