# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-KA-01901-SCT

*TIMOTHY GUNN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/18/2009 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH, III |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY: LESLIE S. LEE |
| | BENJAMIN ALLEN SUBER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LA DONNA C. HOLLAND |
| | SCOTT STUART |
| DISTRICT ATTORNEY: | LAURENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/27/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., LAMAR AND PIERCE, JJ.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     Timothy Gunn was convicted of grand larceny under Mississippi Code Section 97-17-41 in Bolivar County Circuit Court. The trial court sentenced Gunn to ten years as a habitual offender under Mississippi Code Section 99-19-81. Gunn raises three issues on appeal: (1) whether the evidence was sufficient to support the verdict; (2) whether the trial court erred in denying Gunn's motion for a mistrial; and (3) whether the photo lineup identification was

overly suggestive. Because none of these issues have merit, we affirm Gunn's conviction and sentence.

## FACTS AND PROCEEDINGS

¶2. According to trial testimony, Fred King was working at a dry cleaner's in Cleveland, Mississippi, directly across the street from the Moose Lodge, on March 7, 2009. King saw a black male walking around a truck parked across the street at the lodge. King saw the man lift up the top of the tool box and remove a black and gold duffle bag. While watching the activity, King called his boss, James Farmer, to the front of the store to observe the man's behavior. Farmer also witnessed the man take a black and yellow duffle bag from the tool box. Both King and Farmer noticed that the man was wearing a red shirt with khaki pants. After an unsuccessful attempt to reach someone at the Moose Lodge, Farmer called the police.

¶3. Officer Brian Goza responded to the call from dispatcher Helen Brewer. Brewer advised Goza that a black male wearing a red shirt and khaki pants had removed a black and gold duffle bag from a truck parked at the Moose Lodge. Goza spotted a man wearing a red shirt and khaki pants, carrying a yellow and black duffle bag on his shoulder. Once he approached the man, Goza recognized him as Timothy Gunn.

¶4. Goza questioned Steven Simpson, the owner of the truck, about the duffle bag and its contents. Simpson provided receipts totaling more than $ 1,000 for the tools contained in the duffle bag. Goza arrested Gunn and charged him with grand larceny. Two days after the arrest, Investigator Stig Peterson presented King with a photo line up containing six pictures. King identified Gunn immediately as the man he had seen take the duffle bag from the truck.

2

¶5.    At trial, King identified Gunn and testified that he had seen him take a black and gold duffle bag from the tool box of the truck. Farmer testified that he had seen a black male, wearing a red shirt and khaki pants, take a black and yellow duffle bag from a truck parked at the Moose Lodge. And Goza testified that he had apprehended a man wearing a red shirt and khaki pants, and carrying a duffle bag, whom had he recognized from previous encounters as Timothy Gunn. Goza's dashboard camera had captured the stop, and clearly showed a black male, wearing a red shirt and khaki pants, carrying a duffle bag on his shoulder. This video was played for the jury.

¶6.    Gunn's son, Travis Neal, testified that, on the day in question, he had witnessed the police stop his father. Neal stated that his father was wearing a red shirt and khaki pants, but he denied that his father had been carrying a duffle bag on his shoulder. Neal claimed that the officers had retrieved the duffle bag from a nearby field and placed it in the trunk of the police car.

¶7.    Gunn testified at trial and denied taking the tool bag from Simpson's truck. He admitted that he was arrested on the day in question for grand larceny, but maintained that he "wasn't caught with nothing in [his] hands." Gunn further claimed that the police had framed him, and that he was not the same man portrayed in the police video. Ultimately, Gunn was convicted of grand larceny, and now appeals.

**DISCUSSION**

**I.    Whether the evidence was sufficient to support the verdict**.

¶8.    The reviewing court must determine whether, when viewing the evidence in the light most favorable to the State, any rational juror could have found that the State had proved

3

each element of the crime charged beyond a reasonable doubt.[1]  Mississippi Code Section 97-17-41 defines grand larceny:

> Every person who shall be convicted of taking and carrying away, feloniously, the personal property of another, of the value of Five Hundred Dollars ($500.00) or more, shall be guilty of grand larceny, and shall be imprisoned in the Penitentiary for a term not exceeding ten (10) years.[2]

¶9.    Though Gunn asserts he was not the man who stole the duffel bag, overwhelming evidence proves the contrary. King, an eyewitness, testified that he had seen Gunn remove the bag of tools from the victim's trunk and carry them away.   And while Farmer did not see Gunn's face, his description of the incident matched King's, and both men agreed the perpetrator had worn a red shirt and khaki pants.  Two days after the incident, King picked Gunn out of a photo line up with no hesitation. Also, two officers, including Goza, testified that Gunn had been carrying the black and gold bag of tools when approached on the street. Video footage from Goza's car clearly depicts Gunn carrying the black and gold bag on his shoulder.

¶10.    While Gunn alleges he was not the man who carried away the duffel bag, most of his argument focuses on the proper valuation of the tools. The State is required to prove the stolen property was valued at $500 or more at the time of the theft in a grand-larceny case. This Court has held that the proper measure of the value of property is the market value of

---

[1]***Bush v. State***, 895 So. 2d 836, 843 (Miss. 2005).

[2]Miss. Code Ann. § 97-17-41 (Rev. 2006).

the property at the time and place of the larceny, rather than the original purchase price.[3]

However, even considering the market price, the proper valuation is still greater than $500.

¶11.    The tools taken include a DeWalt tool kit, various drills and saws, extra batteries, some tool bits, a set of specialty wirecutters, screwdrivers, and other miscellaneous items. Simpson paid $1,236.90 as the combined price for his tools six months before they were stolen.  Although purchase price of the stolen tools is not direct proof of the market value at the time of the theft, it is circumstantial evidence of value.[4]  Simpson testified that replacing the tools would cost him "approximately the same price."

¶12.    While Gunn claims that his conviction must be reversed because the price of the stolen tools was based on purchase price, a jury is allowed reasonably to infer the value of specific items based on purchase price and additional testimony.[5]  Therefore, though Gunn correctly states the measure of value for the tools, we find that the evidence presented was sufficient for a reasonable juror to find that the value of the stolen tools was more than $500. This issue is without merit.

**II.    Whether the trial court erred in denying Gunn's motion for a mistrial.**

¶13.    Gunn argues that the following exchange between the prosecutor and Peterson violated his right against self-incrimination.

---

[3] ***Ellis v. State***, 469 So. 2d 1256, 1259 (Miss. 1985) (citing ***Barry v. State***, 406 So. 2d 45, 47 (Miss. 1981)).

[4] ***Williams v. State***, 994 So. 2d 821, 825-826 (Miss. Ct. App. 2008).

[5] ***Smith v. State***, 881 So. 2d 908, 909-910 (Miss. Ct. App. 2004).

Q. (Prosecutor) Investigator Peterson, when you advised the defendant of his rights, did he give you any statement?

A. (Peterson) No, ma'am, he did not.

Gunn's counsel made an objection and moved for a mistrial, which the trial court denied.

¶14.   "Whether to grant a motion for mistrial is within the sound discretion of the trial court. The standard of review for denial of a motion for mistrial is abuse of discretion."[6] Further, the test for "whether reversal is required as a result of a prosecutor's improper comment at trial 'is whether or not the natural and probable effect of the statement is to create an unjust prejudice against the accused so as to result in a decision influenced by prejudice.'"[7]

¶15.   It is improper and, ordinarily, reversible error to comment on the accused's post-*Miranda* silence.[8] And when the trial judge determines that the error does not reach the level of prejudice warranting a mistrial, the judge should admonish the jury to disregard the impropriety to cure its prejudicial effect.[9] Here, the exchange between the prosecutor and Peterson concerning Gunn's statement or lack thereof was improper. But we find that reversal is not warranted.

---

[6]*Caston v. State*, 823 So. 2d 473, 492 (Miss. 2002) (citing *Pulphus v. State*, 782 So. 2d 1220, 1222 (Miss. 2001)).

[7]*Hurt v. State*, 34 So. 3d 1191, 1195-96 (Miss. Ct. App. 2009) (citing *Harvey v. State*, 666 So. 2d 798, 801 (Miss. 1995)).

[8]*Quick v. State*, 569 So. 2d 1197, 1199 (Miss. 1990); *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[9]*Gossett v. State*, 660 So. 2d 1285, 1291 (Miss. 1995) (citing *Perkins v. State*, 600 So. 2d 938, 941 (Miss. 1992)).

¶16.  This Court has held that errors may be deemed harmless where "the same result would have been reached had they not existed."[10]  Under some circumstances, reversal is not required, even though the prosecutor asked questions about the defendant's post-arrest silence.[11]  Such a circumstance is when the evidence weighs overwhelmingly against the defendant.[12]  Here, multiple eyewitnesses and video documentation implicated Gunn.  Moreover, the comment was not used to impeach Gunn's trial testimony,[13] nor did the State revisit this fact in its closing argument.  Thus, the error was harmless.

### III.  Whether the photo lineup was overly suggestive.

¶17.  Because he was the only individual in a six-person photographic lineup shown wearing a coat, Gunn claims that the lineup was impermissibly suggestive.  But Gunn failed to raise this issue properly at trial,[14] and is procedurally barred from arguing it for the first time on appeal.[15]  Notwithstanding the procedural bar, this issue lacks merit.

¶18.  The mere fact that Gunn was the only person in the lineup wearing a coat does not make this "effectually a lineup of one and not six pictures," as Gunn argues. The theft

---

[10]*Tate v. State*, 912 So. 2d 919, 926 (Miss. 2005).

[11]*Emery v. State*, 869 So. 2d 405, 409 (Miss. 2004).

[12]*Riddley v. State*, 777 So. 2d 31, 35-36 (Miss. 2000).

[13]As stated in **Puckett v. State**, the government cannot use an accused's exercise of a constitutional right as a weapon to convict him.

[14] Gunn's attorney received a copy of the photo lineup at least two weeks prior to trial. But he failed to file a pretrial motion to suppress the identification evidence.  Further, he did not make an appropriate motion orally on the day of trial.

[15]*Walker v. State*, 913 So. 2d 198, 217 (Miss. 2005).

allegedly was committed by someone wearing a red shirt and khaki pants; there was no testimony the perpetrator was wearing a coat. Further, the pictures in the lineup were chosen by a police department computer program. This program operates by choosing people in the system, at random, with similar height, weight, and age as the suspect. These facts, taken together, indicate that the photo lineup was not impermissibly suggestive.

## CONCLUSION

¶19. Although the exchange between the prosecutor and Peterson was improper, the error was harmless due to the overwhelming evidence of Gunn's guilt. The eyewitness testimony of Gunn's possession of the tools and Simpson's testimony regarding their value were sufficient evidence to support the verdict. Finally, the photographic lineup was not unduly suggestive. For these reasons, we affirm.

¶20. **CONVICTION OF GRAND LARCENY AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AS A HABITUAL OFFENDER, WITHOUT PAROLE OR PROBATION, AFFIRMED.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, RANDOLPH, LAMAR, KITCHENS AND CHANDLER, JJ., CONCUR.**