881 So.2d 908 (2004)
Fredrick Antwain SMITH a/k/a Fredric Antwain Smith a/k/a Fredrick Smith a/k/a Fredric Smith, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-00256-COA.
Court of Appeals of Mississippi.
May 4, 2004.
Rehearing Denied September 7, 2004.
*909 John Keith Perry, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
EN BANC.
IRVING, J., for the Court.
¶ 1. On December 2, 2002, a DeSoto County jury convicted Fredric Antwain Smith of conspiracy and attempt to commit grand larceny. He was sentenced to two five-year consecutive sentences as an habitual offender in the custody of the Mississippi Department of Corrections. Smith now appeals and asserts that the trial court erred (1) in denying his motion for a JNOV, or in the alternative for a new trial, (2) in allowing lay testimony of the value of automobile rims, and (3) in convicting him of conspiracy to commit grand larceny because the evidence was insufficient to support that charge.
¶ 2. We agree that the evidence was insufficient to support the conspiracy conviction. Therefore, we reverse and render the conspiracy conviction but affirm the attempt to commit grand larceny conviction.

FACTS
¶ 3. On January 24, 2002, Susan Brooks was asleep in her home when she was awakened by a noise outside. Susan looked out the window and observed an individual under her carport jacking up her son's pickup truck. Shortly thereafter, a car pulled up, and the man jacking up her son's truck ran and hid behind the house. Later, the man came back out and started jacking up the truck again. Susan opened the door and went outside. The man that she had seen jacking up the truck had left by the time she got the door opened. According to Susan, the man in the car "was slow [sic] leaving." Susan ran up to the car but then decided that was not a good idea. She then went back into the house, called the police, and provided them with a description of both men.
¶ 4. The police stopped a man walking along the highway matching the description provided by Susan. On the scene, Susan identified the man as Fredrick Smith. When Smith was apprehended, the police found a lug nut in his pocket that fit the rims of the victim's truck. In a photo line-up, Susan later identified Dwight Smith as the other man seen driving the car.
¶ 5. Smith was indicted for conspiracy and attempted grand larceny. At the conclusion of his trial, he was found guilty of both counts. Thereafter, Smith filed post-trial motions which were denied. Additional facts will be related during our discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Sufficiency of the Evidence and Denial of Motion for a New Trial
¶ 6. Smith first contends that the trial court erred in denying his motion for a *910 JNOV, or in the alternative, for a new trial. In support of his contention, he makes two arguments: the State failed to establish a valid chain of custody of the lug nut found in his pocket and the trial court erred in allowing Sammy Brooks to give a lay opinion regarding the value of the truck rims which he purchased for his son. Smith specifically claims that the State failed to produce any admissible evidence regarding the value of the rims, that the trial court should not have allowed the jury to hear testimony regarding the lug nut, and that the detective in charge of the evidence should have been presented as a witness to testify to his findings concerning the lug nut. Smith reasons that had the trial court not erred in these rulings, the evidence either would have been insufficient to convict him or so insubstantial that any verdict returned would not have been able to withstand a motion for a new trial.
¶ 7. We consider Smith's arguments under our familiar standard of review. We are authorized to reverse only when the evidence of one or more of the elements of the charged offense is such that "reasonable and fair-minded jurors could only find the accused not guilty." McClain v. State, 625 So.2d 774, 778 (Miss.1993).
¶ 8. At trial, David Meredith, an off-duty police officer at the time of the incident, testified that he heard a call come in about a theft in progress and thereafter observed Smith walking alongside the shoulder of the highway. Meredith further testified that after performing a pat-down for weapons, he located a lug nut in Smith's pocket. Meredith was then shown the lug nut by the prosecutor and asked if it was the lug nut that he had found in Smith's pocket. Meredith stated that "he believed so," and that it "looked like it." The prosecutor then attempted to have the lug nut admitted into evidence. However Smith's counsel objected, and the trial court, though not specifically sustaining the objection, did not admit the lug nut into evidence. Our review of the record reveals that the State did not attempt to revive the matter. Thus, the lug nut was never admitted into evidence.
¶ 9. We find that Smith's arguments concerning defects in the chain of custody of the lug nut are simply irrelevant. As stated earlier, the trial judge did not allow the lug nut to be admitted into evidence. However, even if the judge had allowed the lug nut to be admitted into evidence, Smith's objection would not be well taken. It is well-settled law that "the failure of the prosecution to establish all of the links in the chain of custody implicates the weight to be accorded the evidence by the jury, not its admissibility." Muscolino v. State, 803 So.2d 1240, 1244(¶ 19) (Miss.Ct.App.2002).
¶ 10. We also find that Smith's argument  that the trial court erred in allowing Susan's husband, Sammy, to testify regarding the value of the rims because he did not have a receipt of purchase, nor was he qualified as an expert  is without merit. Although Smith contends that the trial court erred in allowing testimony of the value of the rims, our examination of the record reveals that the witness testified as to the purchase price, not the value of the rims, as Smith argues. Sammy testified that he paid between three and four thousand dollars for the rims, but he did not testify as to their current value. Therefore, we find no error in the admission of Sammy's testimony, for he was entitled to testify to things within his personal knowledge.
¶ 11. We agree, however, with Smith that the prosecution failed to present any direct evidence as to the value of the rims. However, Sammy testified that he paid between three and four thousand *911 dollars for the rims. Although this was not direct testimony of the value of the rims, we find that it circumstantially provided a basis from which the jury could infer that the rims were worth at least $250 because of the amount of the purchase price. While this is not the strongest evidence that could have been, and should have been presented, we cannot say that no fair-minded juror could find Smith guilty on this evidence or that allowing the verdict to stand will amount to an unconscionable injustice.

(3) Conspiracy to Commit Grand Larceny
¶ 12. Finally, Smith claims that there is insufficient evidence to support his conviction of conspiracy to commit grand larceny based on Susan's testimony. Smith further contends that the State failed to establish a valid case of conspiracy between him and the driver of the car.
¶ 13. Smith relies on Franklin v. State, 676 So.2d 287 (Miss.1996) to support his claim. In Franklin, Roderick Franklin and Glen Jackson were among a group of five boys who decided to "mess with" an elderly homeless man. Id. at 288. The teenagers threw rocks at and kicked the victim. Shortly thereafter, one of the other three boys in the group left, came back with a gun and shot the victim. Id. All of the boys were convicted of conspiracy to commit murder. Id. Our supreme court, finding that the only evidence of conspiracy in the case was the fact that Franklin and Jackson went with the other boys to "mess with" the victim, overturned their conviction. Id. at 289. The court found this evidence insufficient and held that there was no evidence of a "union of the minds" between the boy who pulled the trigger and the appellants. Id.
¶ 14. Smith properly advances that for there to be a conspiracy, "there must be a recognition on the part of the conspirators that they are entering into a common plan and knowingly intend to further its common purpose." Id. at 288. "The conspiracy agreement need not be formal or express, but may be inferred from the circumstances, particularly by declarations, acts, and conduct of the alleged conspirators." Id. Thus, "the existence of a conspiracy, and a defendant's membership in it, may be proved entirely by circumstantial evidence." Id.
¶ 15. The State's theory of the case was that Smith and the driver of the car had engaged in a prior conspiracy to steal the rims. We find, however, an absence of any evidence of a "union of the minds" of Smith and the driver of the car. As stated earlier in this opinion, when the driver of the car pulled in Susan's driveway, Smith ran and hid behind the house. Clearly if these two parties were acting in concert, Smith would have recognized his co-conspirator. Also, there would have been no reason for Smith to run upon the arrival of his co-conspirator. Further, the evidence is that when Susan came out of the house, Smith had already left on foot. He did not get into the car even though the car was still in Susan's driveway, pulling away very slowly. Smith was later found, not in the car, but walking along a roadway.
¶ 16. On cross-examination, Susan testified to the following about the driver of the car and Smith:
Q: Did you see the two individuals talking at all?
A: No.
Q: Did you receive any sort of a letter or anything from the individual saying that they had a conversation or anything?
A: No.

*912 Q: Did you see the person who was taking the wheel off of the car approach the other car at all?
A: No.
Q: Did you see him attempt to place anything in that other car at all?
A: No.
Q: Was the trunk of that other car open?
A: I didn't see the trunk.
Q: Did you see any doors on that other car open at all?
A: No.
¶ 17. Additional evidence of the alleged conspiracy was offered by Susan's neighbor, Richard Harris. Harris testified that he saw a four-door "blueish green" dark colored car pull into his driveway before proceeding on to the Brooks's driveway. He stated that he saw the car door open, but did not see anyone get out. Harris further testified that he observed this car as it pulled out of the Brooks's driveway, passing him as it was leaving the area.
¶ 18. As we have already observed, and as indicated by the above passage, the only connection between Smith and the driver of the car is the fact that when the car pulled into the Brooks's driveway, Smith ran but later came back and continued to jack up the truck while the car was still in the driveway. Susan was sure that the man who was doing the jacking saw the man in the car. However, there is no evidence that the two men ever talked, that Smith ever approached the driver, or put anything in the car. Although the rims were removed from the truck, no attempt was made to put them into the car that was in the driveway.
¶ 19. We find that the evidence was insufficient to prove that Smith and the driver of the car had entered into a common plan to commit grand larceny. While the appearance of the car in the Brooks's driveway is somewhat puzzling, a finding, on the evidence presented, that its appearance was due to the furtherance of a conspiracy to steal the rims off of the Brooks's truck would be an impermissible stretch.
¶ 20. THE JUDGMENT OF THE DESOTO COUNTY CIRCUIT COURT OF CONVICTION OF COUNT ONE IS REVERSED AND RENDERED, AND THE JUDGMENT OF CONVICTION OF COUNT TWO, ATTEMPT TO COMMIT GRAND LARCENY, AND SENTENCE OF FIVE YEARS, AS AN HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND FINE OF $1,000, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.