956 So.2d 315 (2006)
Jody EZELL a/k/a Jody M. Ezell, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-00581-COA.
Court of Appeals of Mississippi.
December 12, 2006.
Rehearing Denied May 1, 2007.
*316 David Fitzgerald Linzey, attorney for appellant.
Office of the Attorney General by Jose Benjamin Simo, attorney for appellee.
Before KING, C.J., CHANDLER and ROBERTS, JJ.
CHANDLER, J., for the Court.
¶ 1. Jody Ezell was indicted on two counts of receiving stolen property with a value of over $500 in violation of Mississippi Code Annotated section 97-17-70 (Rev. 2006). A jury trial occurred in the Circuit *317 Court of Lincoln County on November 22-23, 2004. The jury found Ezell guilty on both counts, and the court sentenced him as a habitual offender to ten years on each count in the custody of the Mississippi Department of Corrections, to run consecutively. Ezell appeals, arguing in the alternative that (1) his conviction for receiving stolen property was improper because the evidence pointed to Ezell's having stolen the property himself and (2) there was insufficient evidence on the element of guilty knowledge to support his conviction.
¶ 2. We find that there was sufficient evidence to support Ezell's conviction of receiving stolen property and, therefore, we affirm his conviction and sentence.

FACTS
¶ 3. Ezell is the nephew of Tracy Lofton. Tracy and his wife, Alicia, live on Lofton Trail in Brookhaven, Mississippi. On January 3, 2004, Alicia reported to the Lincoln County Sheriff's Department that her black Yamaha motorcycle and Tracy's sixteen foot flat bed trailer had been stolen from outside their home. Before being taken, the trailer had been sitting in the yard at the end of the driveway, visible from the road. The motorcycle had been leaning against a shed in the yard. The motorcycle had a tag. The motorcycle's key was kept inside the house.
¶ 4. Stephanie Lofton testified that, in late December 2003, Ezell had briefly visited the Lofton residence. Only the Loftons' children, Stephanie and Don, were home at the time of Ezell's visit. Ezell spoke with Stephanie while standing in the driveway of the Loftons' property. Stephanie stated that, from Ezell's vantage point, the trailer and motorcycle were visible. Stephanie stated that Ezell commented that he had a motorcycle just like the one they had. At a family wedding on February 14, 2004, the Loftons saw Ezell and told him that their motorcycle and trailer had been stolen; Ezell said nothing in response.
¶ 5. On April 2, 2004, Ezell had a wreck while riding a motorcycle that was later identified by the vehicle identification number as the one stolen from Alicia. The officer from the Brookhaven Police Department who responded to the wreck observed that the motorcycle Ezell was riding had no tag. The officer did not ascertain if the motorcycle had been reported as stolen. The Brookhaven Police Department had the motorcycle towed to Highway 84 Chevron where it was stored. Later, Ezell went to Highway 84 Chevron and inquired about paying the storage fees in order to take the motorcycle out of storage. Ezell was unable to afford the storage fees and gave the motorcycle's key, which had been in his possession, to the owner of Highway 84 Chevron.
¶ 6. In June 2004, Tracy was parked at a red light in Brookhaven and saw his trailer connected to another vehicle on the road. Tracy was able to recognize the trailer as his own due to some modifications he had made to the trailer. Tracy followed the vehicle to its destination and then talked to the vehicle's driver, Rhett Gilcrease. Gilcrease informed Tracy that, sometime in February 2004, he had purchased the trailer from Ezell for $400. In response to Tracy's questions, Gilcrease told Tracy that Ezell had a motorcycle. On June 5, 2004, Tracy informed the sheriff's department that he had located the trailer. The trailer Gilcrease bought from Ezell was identified as the one stolen from Tracy. It was established that, at some point before Gilcrease bought the trailer from Ezell, the trailer's serial number had been removed.
¶ 7. Shortly thereafter, Ezell phoned the Loftons and spoke with Tracy. The Loftons' caller identification device showed *318 that Ezell was calling from the Spanish Inn in Brookhaven. While Tracy spoke with Ezell, Alicia called the sheriff's department and reported Ezell's location. Meanwhile, Ezell told Tracy that he knew the authorities were looking for him but that he had not stolen the motorcycle and trailer. Ezell stated that he had purchased the motorcycle in Tylertown, Mississippi for $3,000, using the proceeds from selling a fleet of trucks. Ezell stated that the seller of the motorcycle had asked him to sell the trailer for him, and that Ezell had agreed, had sold the trailer to Gilcrease, and had given the proceeds to the seller. Ezell also told Tracy that a battery charger had been stolen at the same time as the motorcycle and trailer. Tracy testified that, at that time, only his insurer had been told that the battery charger was missing.
¶ 8. On June 9, 2004, Ezell was arrested at the Spanish Inn. On June 14, 2004, Ezell waived his rights and gave a statement to Captain Steve Rushing. According to Ezell, around the end of February 2004 or March 1, 2004, he had seen the motorcycle sitting atop the trailer at the Super 98 Truck Stop at the intersection of Highway 583 and Highway 98 in Tylertown. A sign advertised the motorcycle and trailer for sale. Ezell called the phone number on the sign and contacted David Freeman, who was selling the motorcycle and trailer. Freeman sold Ezell the motorcycle for $3,000. Freeman did not give Ezell the title to the motorcycle or a sales receipt. Ezell stated that Freeman let him borrow the trailer to take the motorcycle home. Freeman asked Ezell if he would sell the trailer for him, and Ezell agreed. Ezell sold the trailer and gave the proceeds to Freeman. Ezell told Officer Rushing that he had not seen Freeman since giving him the proceeds from the trailer sale. Ezell stated that, on February 14, 2004, when the Loftons told him about the theft of their motorcycle and trailer, he had not realized that the stolen items were the very items he had obtained from Freeman.
¶ 9. Ezell told Officer Rushing that he could verify his story by giving him Freeman's phone number. However, Ezell never gave Officer Rushing the phone number. No one else was able to give Officer Rushing any information about Freeman. The managers of the Super 98 Truck Stop told Officer Rushing and testified at the trial that no motorcycle and trailer had ever been for sale there, that the truck stop did not allow the placement of vehicles for sale on the premises, and that employees continually monitored the truck stop premises and had any abandoned vehicles removed.
¶ 10. Ezell did not testify. The jury found Ezell guilty on both counts of receiving stolen property.

LAW AND ANALYSIS
I. THE STATE'S EVIDENCE POINTS TO THE DEFENDANT STEALING THE PROPERTY.
¶ 11. This issue attacks the sufficiency of the evidence of Ezell's guilt of receiving stolen property. This issue was preserved by Ezell's motion for a JNOV, which was denied by the trial court. On appellate review of the denial of a JNOV, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2004) (quoting Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). It is the jury's role to evaluate the weight and credibility of the evidence and to resolve conflicts in the evidence. Latiker v. State, 918 So.2d 68, 73(¶ 12) (Miss.2005).
*319 ¶ 12. Invoking a precedent that one cannot be convicted of receiving what one has stolen, Ezell argues that the State's evidence points to Ezell himself having stolen the property and, therefore, he could not have been convicted of receiving stolen property. According to Mississippi Code Annotated section 97-17-70(1) (Rev.2006):
A person commits the crime of receiving stolen property if he intentionally possesses, receives, retains or disposes of stolen property knowing that it has been stolen or having reasonable grounds to believe it has been stolen, unless the property is possessed, received, retained, or disposed of with intent to restore it to the owner.
The elements of the crime are: "(1) the [intentional] possession, receipt, retention or disposition of personal property (2) stolen from someone else (3) with knowledge or a reasonable belief that the property is stolen." Washington v. State, 726 So.2d 209, 212-13(¶ 10) (Miss.Ct.App.1998). It is no defense to the crime that the person who stole the property has not been convicted, apprehended, or identified. Miss. Code Ann. § 97-17-70(2) (Rev.2006).
¶ 13. In 1986, the Supreme Court quoted a still-earlier precedent on the issue before us: "where a defendant is charged with receiving stolen goods, and the evidence shows that he is guilty of the larceny of the goods in question, he cannot be convicted of the offense with which he is charged." Hentz v. State, 489 So.2d 1386, 1389 (Miss.1986) (quoting Thomas v. State, 205 Miss. 653, 657, 39 So.2d 272, 273 (1949)). In Thomas, the supreme court reversed Thomas's conviction for receiving stolen property, namely fertilizer, where the evidence and all reasonable inferences drawn therefrom showed that Thomas himself had removed the fertilizer from the owner's seed house. Thomas, 205 Miss. at 657-58, 39 So.2d at 273. In Hentz, the court reversed a conviction for receiving stolen property, a combine, where the trial testimony showed that Hentz and his accomplice had taken the combine from its owner and were guilty of grand larceny. Hentz, 489 So.2d at 1388-89.
¶ 14. The statutory language at the time of Hentz and Thomas was this: "If a person buy or receive in any manner or on any consideration personal property of any value, feloniously taken away from another, knowing the same to have been so taken, he shall be guilty of receiving stolen goods. . . ." Miss.Code § 2249 (1942). The statute was not amended prior to the 1986 Hentz decision, though it had been recodified. See Miss.Code Ann. § 97-17-69 (1972), repealed 1993 Miss. Laws ch. 359, § 5. The operative statutorily-identified acts for the crime were to "buy or receive" property, knowing it to be stolen.
¶ 15. The supreme court explained that the crime of receiving stolen property is not intended to impose a double penalty upon the thief, but is directed against those who would "make theft easy or profitable." Hentz, 489 So.2d at 1389. The law has been that if in a trial for the offense of receiving stolen property, the evidence shows the defendant is guilty of the larceny of that property, the defendant cannot be convicted of receiving stolen property. Id. The law has been further refined to the effect that one who acted as an accessory before the fact to larceny and who received the goods after the theft, but was not present at the actual caption and asportation of the goods, may be indicted for either larceny or for receiving stolen goods, but not for both. Knowles v. State, 341 So.2d 913, 916 (Miss.1977). One guilty of larceny as a principal, who participated in the caption and asportation of the goods, *320 may not be indicted for receiving stolen goods. Id.
¶ 16. These rules arguably have changed. In 1993, the legislature determined to "revise the crime of receiving stolen property" in various ways. 1993 Miss. Laws ch. 359, caption. Two different levels of penalties were provided for the receipt of property, depending on the property's worth. Miss.Code Ann. § 97-17-70(3) & (4) (Rev.2006). More importantly for our purposes, the felonious acts by an accused were now these: "possesses, receives, retains or disposes of stolen property," if the accused reasonably should know that the property was stolen. This crime, though still labeled "receiving stolen property," now appears broader than the crime as it existed prior to 1993. One possible result of the legislative broadening would be to avoid the largely pointless difficulties of proving whether someone else committed the initial larceny.
¶ 17. We do not find that the supreme court has addressed whether the amended statutory language eliminated the restriction that a person cannot commit this offense of receiving stolen property if he, himself, was the thief. In one recent opinion, we did not note a possible change in the crime. This Court vacated a conviction of receiving a stolen gun, when all the evidence adduced at the trial showed that the defendant herself had taken the gun from its owner. Young v. State, 908 So.2d 819, 830(¶ 31) (Miss.Ct.App.2005). There was no evidence tending to show that Young had obtained the gun from some third person, and we therefore concluded that the evidence was insufficient to sustain Young's conviction.
¶ 18. Ezell contends that, viewing the evidence in the light most favorable to the State, the evidence showed that he stole the motorcycle and trailer and thus the evidence was insufficient to sustain his conviction of receiving stolen property. If the statute no longer requires that there be evidence that someone else stole the property, then obviously the issue has no merit. Even if the statutory crime has not been altered in this way, Ezell's argument still fails. In Young and related cases, the evidence was such that no reasonable jury could have concluded that the defendant had not obtained the property directly from the owner. Here, there was direct evidence that Ezell had obtained the property from a third person because Ezell told Officer Rushing that he had obtained the motorcycle and trailer from David Freeman and told Tracy that he had obtained them from someone in Tylertown. Viewing the evidence in the light most favorable to the verdict, a finding is justifiable that the defendant was not a principal to larceny. This issue is without merit.
II. THE STATE FAILED TO SHOW GUILTY KNOWLEDGE AT THE TIME OF THE INITIAL POSSESSION OF THE PROPERTY.
¶ 19. The crime of receiving stolen property requires that the person possess, receive, retain, or dispose of stolen property with knowledge it has been stolen or with reasonable grounds to believe it has been stolen. Miss.Code Ann. § 97-17-70(1) (Rev.2006). Ezell argues that there was insufficient evidence on the element of guilty knowledge to support his conviction because his conduct after acquiring the motorcycle was inconsistent with his having known the motorcycle was stolen property. Ezell points to the evidence that he openly possessed the motorcycle by routinely riding it around Brookhaven, including to and from his job on the main street in Brookhaven and to and from the homes of relatives who lived in the vicinity of the Loftons. Further, there was evidence that Ezell was in an accident while riding the *321 motorcycle, received tickets from the police in connection with the accident, and checked on the motorcycle when it was being stored at Highway 84 Chevron. Ezell contends that this use of the motorcycle was inconsistent with his having had knowledge that the motorcycle was stolen property.
¶ 20. Despite Ezell's open use of the motorcycle in Brookhaven, there was sufficient evidence on the element of guilty knowledge to sustain Ezell's conviction of receiving stolen property. The indictment charged Ezell with possessing the stolen trailer on or between the dates of January 3, 2004 and June 5, 2004, and with possessing the stolen motorcycle on April 2, 2004. There was evidence from which a reasonable jury could have inferred that on those dates Ezell knew or had reasonable grounds to know that the items in his possession were the ones stolen from the Loftons. The Loftons testified that, on February 14, 2004, they told Ezell that their motorcycle and trailer had been stolen. Ezell told Officer Rushing that, on February 14, 2004, he had not realized that the Loftons's stolen motorcycle and trailer were the same motorcycle and trailer he had received from David Freeman. There was testimony that Ezell visited the Lofton residence in December 2003, that he commented about the motorcycle, and that the trailer was parked at the end of the driveway and visible from where Ezell was standing in the driveway. From this evidence, a reasonable jury could infer that Ezell was familiar with the Lofton's motorcycle and trailer and that, as of February 14, 2004, he knew or should have known that the motorcycle and trailer in his possession were those stolen from the Loftons. Further supporting a jury finding that Ezell had guilty knowledge were the facts that the motorcycle's tag had been removed sometime between its theft and Ezell's motorcycle wreck, and that the trailer's serial number had been obscured sometime between its theft and Ezell's sale of the trailer to Gilcrease. The evidence was sufficient to enable a reasonable juror to conclude that Ezell knew or reasonably should have known that the motorcycle and trailer were stolen property. The significance of Ezell's use of the motorcycle around Brookhaven was a matter for the jury to weigh.
¶ 21. We briefly discuss the sufficiency of the State's evidence of the value of the motorcycle and trailer, an issue unaddressed by Ezell's arguments on the sufficiency of the evidence. Ezell was convicted on both counts under section 99-17-70(3), which provides for up to a ten year maximum penalty and a $10,000 fine for a person convicted of receiving stolen property with a value of over $500. When an item's value is an element of the crime, the State must provide proof as to the value of the item. Henley v. State, 729 So.2d 232, 238(¶ 25) (Miss.1998).
¶ 22. In Williams v. State, 763 So.2d 186, 188(¶ 7) (Miss.Ct.App.2000), we recognized that, in a receipt of stolen property prosecution, the correct measure of the value of the property is the property's market value on the date of the crime. We further observed that, "[i]n the ordinary case . . . the original cost of the property or any special value to the owner personally is not considered." Id. (quoting Barry v. State, 406 So.2d 45, 47 (Miss. 1981)). Williams was convicted of receiving stolen property, namely a car stereo and flashlight, with a value of over $250. Id. at 188(¶ 5). The only evidence of the value of the car stereo and flashlight was that the items were in good condition, that the car stereo had been purchased two and a half years prior to the theft for $600, and the flashlight had been purchased one year before for $110. Id. at 188(¶ 6). We *322 found that there was no competent evidence of the items's market value on the date of the crime, and reversed Williams's conviction and remanded for sentencing on the lesser crime of receiving stolen property not exceeding $250 in value. Id. at 188, 189 (¶¶ 8,10).
¶ 23. In this case, the sole evidence of the value of the motorcycle and trailer was their original purchase prices. Concerning the value of the motorcycle, Alicia testified that she had purchased the motorcycle used in the year 2000 for $5,600. Concerning the value of the trailer, Tracy testified that he had purchased the trailer used two or three years before the theft for $500, plus another trailer in trade. In Smith v. State, 881 So.2d 908, 909(¶ 2) (Miss.Ct.App. 2004), we affirmed Smith's conviction for attempted grand larceny pertaining to truck rims. The sole evidence of the value of the rims was the owner's testimony that he had paid between $3,000 and $4,000 for the rims. Id. at 910(¶ 11). We found that, though the testimony about the original purchase price was not the strongest possible evidence of market value, it circumstantially provided a basis from which the jury could reasonably infer that the rims were worth at least $250 at the time of the theft. Id. As in Smith, the testimony sub judice was such that a reasonable jury could have inferred that the motorcycle and trailer had market values in excess of $500 at the times of their knowing possession by Ezell. We find that the evidence was sufficient to sustain Ezell's conviction of two counts of receiving stolen property valued in excess of $500.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF LINCOLN COUNTY OF CONVICTION OF COUNT ONE, RECEIVING STOLEN PROPERTY AND SENTENCE OF TEN YEARS; AND COUNT TWO, RECEIVING STOLEN PROPERTY AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER, WITH SENTENCES TO RUN CONSECUTIVELY, A TOTAL FINE OF $20,000 AND TOTAL RESTITUTION OF $8,750, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LINCOLN COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.