BARNES, J.,
for the Court:
¶ 1. Earnest Ladd was convicted in the DeSoto County Circuit Court of conspiracy to commit grand larceny, grand larceny, burglary of a dwelling, and receiving stolen property. He was sentenced as a habitual offender to five years for conspiracy, ten years for grand larceny, twenty-five years for burglary, and five years for receiving stolen property. All sentences were ordered to be served concurrently in the custody of the Mississippi Department of Corrections (MDOC). Ladd was also ordered to pay a $1,000 fine to the Mississippi Crime Victims’ Compensation Fund and $800 in restitution to the victim, Sandra Brown. Following the denial of his motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, Ladd appealed, claiming the evidence is insufficient to support the verdicts for his four convictions.
¶ 2. In Part I of this opinion, we affirm the judgment for Count I, conspiracy to commit grand larceny. In Part II, we reverse the judgment of conviction for Count II, burglary of a dwelling, and remand for re-sentencing for trespass. In Part III, we affirm the judgment of conviction for Count III, grand larceny. Finally, in Part IV, we reverse and render the judgment of conviction for Count IV, receiving stolen property.
FACTS AND PROCEDURAL HISTORY
¶ 3. On December 27, 2007, John Hardy stopped at a grocery store in Askew, Mississippi, leaving his keys in the ignition of his silver 2006 Chevy Silverado truck with the engine running. While he was inside, the truck was stolen. He did not see who took the truck. He reported the theft to the Panola County Sheriffs Department.
¶ 4. Three days later, on December 30, 2007, Brown was sweeping the garage of her home in Southaven, Mississippi. She went inside the house for a glass of water, leaving the garage door open because she planned to leave for work soon. Hearing a noise outside, she went back to the garage and saw a white man and a black man standing there. Brown yelled at the men, asking them what they were doing. The two men then threw Brown’s lawn equipment from her garage into a silver truck and quickly backed out of her driveway. Brown testified that she got a “good solid look” at the men though the truck’s front window. The white man was the driver; the black man, who was later identified as Ladd, was a passenger.
¶ 5. Brown started to follow the men in her truck, but then decided to go home and call the police. When the police arrived, Brown reported that the following items had been taken: a Troy-Bilt lawn mower that Brown had bought for $400; a Husqvarna weed eater, for which she had paid $250; and a Black and Decker edger valued at $200. After the police left, Brown drove to an area of Memphis, Tennessee, as she had a suspicion the men might have gone there to sell her items. After turning down a street, Brown met the same men coming towards her in the silver truck. Brown called the police and reported the vehicle’s tag number and location. The police requested that Brown return home, and she complied.
¶ 6. However, still bothered by the events, Brown and her neighbors drove back to the same Memphis neighborhood a short time later. This time, Brown requested police assistance. Driving to the street where she had seen the truck earlier, they again met the silver truck with the two men inside. The white man was still driving, and Ladd was the passenger. Brown said the driver “floored it” and took out across a field and down a street with the police in pursuit. Brown returned *1112 home. Again, the men were not apprehended at that time.
¶ 7. Detective Todd Samples of the Sou-thaven Police Department was assigned to investigate Brown’s case. He processed the license plate number on the silver truck and identified it as Hardy’s stolen vehicle. A Panola County investigator gave Detective Samples the name of Terry Stuart as the possible thief of the truck. Brown later identified Stuart from a photographic spread as the white man who was in her garage and drove the silver truck.
¶ 8. On January 24, 2008, a high-speed car chase in Memphis, following an unrelated burglary, resulted in the Memphis Police Department’s apprehending Stuart and Ladd. Brown identified Ladd as the passenger in the silver truck who took part in the burglary. Brown also identified Ladd at trial as the man she saw in her garage and twice as a passenger in the silver truck.
¶ 9. Ladd was convicted by a jury in the DeSoto County Circuit Court of Count I, conspiracy to commit grand larceny; Count II, grand larceny; Count III, burglary of a dwelling; and Count IV, receiving stolen property, the silver Chevy Silverado truck. He was sentenced as a habitual offender to five years for conspiracy, ten years for grand larceny, twenty-five years for burglary of a dwelling, and five years for receiving stolen property. All sentences were ordered to run concurrently in the custody of the MDOC, and Ladd was ordered to pay $1,000 to the Mississippi Crime Victims’ Compensation Fund and $800 in restitution to Brown for her stolen lawn equipment, which was never retrieved.
¶ 10. At trial, Ladd moved for a directed verdict, which the trial judge denied. Ladd subsequently filed a post-trial motion for a JNOV or, in the alternative, a new trial. The trial court denied Ladd’s post-trial motion, and Ladd now appeals his four convictions, claiming that the evidence was insufficient to support the verdicts.
DISCUSSION AND ANALYSIS
¶ 11. Ladd claims that the evidence was insufficient to support his convictions for Counts I-IV. When reviewing the legal sufficiency of evidence, an appellate court considers the evidence “in the light most favorable to the prosecution.” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). If “the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed,”’ the appellate court will uphold the verdict. Id. (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). However, where the evidence “ ‘point[s] in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,’ the proper remedy is for the appellate court to reverse and render.” Id. (citing Edwards v. State, 469 So.2d 68, 70 (Miss.1985)).
PART I. COUNT I, CONSPIRACY TO COMMIT GRAND LARCENY
¶ 12. Ladd argues that the State failed to present any evidence that he conspired with Stuart to commit grand larceny. He claims the only evidence of the crime of conspiracy comes from Brown’s testimony that she saw the two men stealing items from her garage. Without proof of any agreement to commit grand larceny, Ladd claims the evidence is insufficient to support his conviction for conspiracy.
*1113 ¶ 13. When two or more persons combine or agree to commit a crime, they violate our law of conspiracy. Miss.Code Ann. § 97 — 1—1 (1 )(a) (Supp.2011). “A conspiracy is a completed offense, requiring proof of no overt act done in pursuance thereof.” Ford v. State, 546 So.2d 686, 688 (Miss.1989) (citations omitted). Each conspirator “must intend a common plan and know its common purpose.” Id. (citing McCray v. State, 486 So.2d 1247, 1251 (Miss.1986)). The agreement to commit the criminal act “need not be formal or express, but may be inferred from the circumstances, particularly by declarations, acts, and conduct of the alleged conspirators.” Id.
¶ 14. Ladd cites Franklin v. State, 676 So.2d 287, 288 (Miss.1996), for the proposition that for a conspiracy to exist, there must be a “union of the minds” among the alleged conspirators. In Franklin, the only evidence produced to convict Roderick Franklin of conspiracy to commit murder was that he and some other teenagers went to “mess with” a homeless man. Id. at 289. The supreme court held: “There is no evidence to indicate that ... Franklin ... recognized that, by ‘messing with’ the victim, he had entered into a common plan to commit murder or that he knowingly intended to further the common purpose of that plan.” Id. Thus, the Franklin court reversed and rendered the conviction of conspiracy, concluding that there was no evidence of a “union of the minds” between the boy who pulled the trigger and Franklin. Id.
¶ 15. However, we find the facts in Franklin distinguishable from this case. Brown testified that the two men were in her garage, and when she discovered them, they threw her lawn equipment into the back of a truck and sped away. It can be inferred from the actions of Ladd and Stuart that a common plan to steal items from Brown’s garage was agreed upon. They were both in Brown’s garage, uninvited, and they worked in unison to load Brown’s personal property into the back of a pickup. When caught “red-handed” by Brown, both jumped into the truck and drove away hurriedly. Under these circumstances, we find that the trial court did not err by denying Ladd’s motions for a directed verdict and a JNOV as to Count I, conspiracy to commit grand larceny, and therefore affirm Ladd’s conviction on this count.
PART II. COUNT II, BURGLARY OF A DWELLING
¶ 16. Ladd claims that since he walked through an open garage door, the “breaking” element of the crime of burglary of a dwelling was not satisfied. Rather, he contends that the evidence produced a showing of no more than a trespass charge against him. Ladd did not raise the issue regarding the “breaking” element in his motion for directed verdict or his motion for a JNOV. Thus, this issue is procedurally barred from appellate review. See Sheffield v. State, 749 So.2d 123, 126 (¶ 10) (Miss.1999) (finding defendant’s argument procedurally barred for appellate purposes where he made no specific challenge to the State’s proof that the structure burglarized was a dwelling).
¶ 17. However, Ladd argues that this Court may address this issue by finding plain error. A review under the plain-error doctrine is necessary when a party’s “substantive or fundamental rights are affected,” and the error results “in a manifest miscarriage of justice.” Jenkins v. State, 75 So.3d 49, 57 (¶ 22) (Miss.Ct.App. 2011) (citations omitted). In Evans v. State, 919 So.2d 231, 235 (¶ 15) (Miss.Ct. App.2005), this Court held:
It is not open to reasonable debate that the right-not to be convicted of an of *1114 fense unless the State proves beyond a reasonable doubt each and every element of the offense-is a fundamental right anchored in our constitution and the jurisprudence of this state. And respecting fundamental rights, our law is well settled that a plea of guilty does not waive the failure to charge an essential element of the offense. Jefferson v. State, 556 So.2d 1016, 1019 (Miss.1989). By comparison, we see no reason why a defendant’s failure to object to the State’s failure to prove and present instructions on an essential element of the offense, ought to waive the State’s failure to meet its burden. Therefore, we notice as plain eiror the matter of the insufficiency of the proof of an element of the crime with which Evans was charged and find that the State failed to meet its burden of proof.
(Emphasis added). Likewise, employing the plain-error doctrine, we find that the State failed to meet its burden of proof that Ladd’s actions satisfied the essential element of breaking.
¶ 18. The crime of burglary of a dwelling is codified in Mississippi Code Annotated section 97-17-23(1) (Supp.2011) as follows:
Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by commitment to the custody of the Department of Corrections for not less than three (3) years nor more than twenty-five (25) years.
The jury was instructed to find Ladd guilty of burglary of a dwelling if it found beyond a reasonable doubt that: (1) Brown’s house was a dwelling; (2) Ladd “unlawfully broke and entered said dwelling”; and (3) Ladd intended to commit the crime of larceny once inside. The jury was not given a definition of breaking. There is nothing in the record to indicate that Ladd or Stuart used any act of force in entering Brown’s garage. Brown testified she left the garage door up because she was getting ready to leave for work. A photograph of Brown’s garage introduced into evidence shows that the garage door is up.[1] Ladd argues the State failed to prove the “breaking” element necessary for conviction of burglary of a dwelling as the proof simply showed that he walked through an open garage door.
¶ 19. “It is well-established [law] in Mississippi that a breaking is conducted by an act of force, regardless of how slight, necessary to be used in entering a building, such as turning a knob, a slight push to further open a door, or raising a latch.” Davis v. State, 910 So.2d 1228, 1231 (¶ 8) (Miss.Ct.App.2005) (citing Gross v. State, 191 Miss. 383, 391, 2 So.2d 818, 820 (1941)). “To constitute burglary, a ‘structure must generally be closed. Otherwise the entry is merely a trespass, not a “breaking” and a burglary.’ ” Harris v. State, 68 So.3d 754, 757 (¶ 11) (Miss.Ct.App.2011) (quoting Hill v. State, 929 So.2d 338, 340 (¶ 5) (Miss.Ct.App.2005)).
¶ 20. The State cites to our opinion in Chaney v. State, 802 So.2d 113, 115 (¶ 9) (Miss.Ct.App.2001), wherein we held that passage through a door that was propped open “broke the plane” and was an “act or force, however, slight, employed to effect an entrance.” In Chaney, the only evidence produced by the State as to the breaking element were two written state *1115 ments by Lederrick Chaney and his co-defendant, given shortly after their arrest. The statements, which were the sole direct evidence of Chaney’s participation in the theft, expressed that Chaney and his co-defendant were alerted by an associate about a clothing store that had already been burglarized. When they arrived to steal some merchandise, they found the window already broken, and the door pushed open. According to the statements, Chaney was the lookout, while the other two walked inside the open door. We found this evidence was sufficient to prove a “breaking,” and we upheld Chaney’s burglary conviction. We subsequently applied Chaney to a similar situation in Brown v. State, 48 So.3d 614, 616 (¶ 9) (Miss.Ct.App.2010) and upheld a conviction of burglary of a dwelling, where the defendant claimed he merely walked in through an open door.
¶ 21. In Chaney, the votes were split 5-5. Judge Myers wrote the majority opinion, affirming the conviction, and Judge Southwick wrote the dissenting opinion, arguing that the majority opinion had stretched the statute’s application too far. Upon further examination, we conclude that Chaney was wrongly decided. In upholding Chaney’s conviction and finding that crossing “the plane” of the door constituted a “breaking,” the majority relied upon this Court’s findings in Genry v. State, 767 So.2d 302 (Miss.Ct.App.2000). However, Michael Genry’s conviction for burglary was upheld because it constituted a “ ‘constructive breaking’ which occurs when an accused’s entry into the questioned premises was gained by his use of threat, deceit, fraud or trickery.” Id. at 309 (¶ 21) (quoting Templeton v. State, 725 So.2d 764 (¶ 6) (Miss.1998)). Chaney dealt with entry of an already open door. There was no fraud or deceit used to gain entrance. While this action satisfies the “entering” element of burglary, we find that it does not satisfy the “breaking” element.[2]
¶ 22. Adopting the reasoning of Judge Southwick’s dissent in Chaney, we conclude that the mere act of walking through a raised, open garage door does not constitute an “act or force, however slight, employed to effect an entrance” and is not a “breaking.”[3] Therefore, our holding in Chaney is overruled.[4]
¶ 23. In conclusion, we find that Ladd’s act of walking through Brown’s open garage door does not satisfy the necessary “breaking” element to warrant a charge for burglary of a dwelling. Ladd’s actions, however, do warrant a lesser-included charge of trespass upon Brown’s property. See Miss Code Ann. § 97-17-93 (Supp.2011). Trespass is a lesser-included *1116 offense of burglary. Hill, 929 So.2d at 341 (¶ 11). “The elements of trespass include wilfully and maliciously entering another’s property without permission or remaining on his or her property after being told to leave.” Id. We reverse the trial court’s judgment for burglary of a dwelling and remand the case for sentencing Ladd on the charge of trespass.
PART III. COUNT III, GRAND LARCENY
¶24. Ladd claims that because the value of the stolen property was not adequately proven at trial, there was not sufficient evidence to support his conviction for grand larceny. The grand larceny statute reads in pertinent part: “Every person who shall be convicted of taking and carrying away, feloniously, the personal property of another, of the value of Five Hundred Dollars ($500.00) or more, shall be guilty of grand larceny[.]” Miss.Code Ann. § 97-17-41(1) (Rev. 2006). The Mississippi Supreme Court “has held that the value of a stolen item is an essential element of grand larceny, and the State’s failure to prove the value warrant[s] resen-tencing for petit larceny.” Patton v. State, 34 So.3d 563, 573 (¶33) (Miss.2010) (citing Henley v. State, 729 So.2d 232, 238(¶28) (Miss.1998)). In determining the value of the stolen property, the appropriate measure “is the market value of the property at the time and place of the larceny; the original cost of the property or any special value to the owner personally is not considered.” Thompson v. State, 910 So.2d 60, 63 (¶ 9) (Miss.Ct.App.2005) (citation omitted).
¶25. Brown provided the only testimony of the value of the lawn equipment. She testified that the stolen items were: (1) a Troy-Bilt lawn mower that she bought for $400; (2) a Husqvarna weed eater, for which she paid $250; and (3) a Black and Decker edger purchased for $200, for a total loss of $850. Furthermore, Brown stated that none of the three items were more than a year old and that the lawn mower was only a few months old. She also confirmed that all of the equipment was in working condition.
¶ 26. In Smith v. State, 881 So.2d 908, 910-11 (¶¶ 10-11) (Miss.Ct.App.2004), this Court held that while there may not be direct evidence of the value of stolen items, the owner of the merchandise may establish the value of the stolen property by testifying about what he paid for the stolen items. This type of testimony “circumstantially provide[s] a basis from which the jury could infer” the value of the items. Id. at 911 (¶ 11). The purchase price of the items is something about which the owner has personal knowledge; therefore, he should be allowed to testify about what he had paid for the item. Id. at 910 (¶ 10). In a recent case, Gunn v. State, 56 So.3d 568, 571 (¶¶ 11-12) (Miss.2011), the Mississippi Supreme Court held that the victim’s testimony regarding the recent purchase value of the stolen items “was sufficient for a reasonable juror to find that the value of the stolen tools was more than $500.” The supreme court determined that “[although purchase price of the stolen tools is not direct proof of the market value at the time of the theft, it is circumstantial evidence of value.” Id. at (¶ 11) (citing Williams v. State, 994 So.2d 821, 825-26 (¶¶ 13-14) (Miss.Ct.App.2008)); see also Ezell v. State, 956 So.2d 315, 322 (¶ 23) (Miss.Ct.App.2006) (“[Tjhough the testimony about the original purchase price was not the strongest possible evidence of market value, it circumstantially provided a basis from which the jury could reasonably infer that the [stolen items] were worth at least $250 at the time of the theft.”).
*1117 ¶ 27. Brown testified that she paid $850 for the stolen items and that all three items were less than a year old. We find Brown’s testimony sufficient for the jury to infer, beyond a reasonable doubt, that the stolen lawn equipment was valued at more than $500. Therefore, we find this issue without merit and affirm Ladd’s conviction for Count III, grand larceny.
PART IV. COUNT IV, RECEIVING STOLEN PROPERTY
¶ 28. Ladd claims there was no evidence to support the charge for receiving stolen property. The indictment charged that Stuart and Ladd did:
wilfully, unlawfully and feloniously, possess, receive, retain or dispose certain personal property of John Hardy, to-wit: One (1) 2006 Chevrolet pickup truck, of the total and aggregate value in excess of $500.00 ... knowing that said property had been stolen, or having reasonable grounds to believe said property had been stolen, and without the intent to restore said property to its owner.
¶ 29. The State claims that Ladd’s argument is procedurally barred because he only made a slight argument about receiving stolen property in his motion for a directed verdict. The record shows that Ladd’s attorney made the following argument at trial: “I would submit that [there] hasn’t been shown a prima facie case sufficient ... to get Counts 3 and 4 ... to the jury, Your Honor.” Though succinct, Ladd’s argument is simply that the State did not make out a prima facie case sufficient to convict Ladd of receiving stolen property. The trial court even responded to Ladd’s claim, stating that Counts II, III, and IV (receiving stolen property) “have clearly met a prima facie case.” Therefore, we find that Ladd addressed this issue before the trial court.
¶ 30. Mississippi Code Annotated section 97-17-70(1) (Supp.2011) states:
A person commits the crime of receiving stolen property if he intentionally possesses, receives, retains or disposes of stolen property knowing that it has been stolen or having reasonable grounds to believe it has been stolen, unless the property is possessed, received, retained or disposed of with intent to restore it to the owner.
It is no defense to the crime that the person who stole the property “has not been convicted, apprehended, or identified.” Miss.Code Ann. § 97-17-70(2) (Supp.2011). Therefore, “the State must not only prove the defendant’s possession, receipt, retention or disposition of stolen property, but must also show that the defendant knew or had reasonable grounds to believe the property had been stolen.” Short v. State, 929 So.2d 420, 425 (¶ 13) (Miss.Ct.App.2006). It is not necessary to prove that the defendant took the stolen property into his hands, but rather that the defendant “has performed some act with respect to the property, that he has exercised dominion or control over it, though such need not have been exclusive.” Williams v. State, 595 So.2d 1299, 1303 (Miss.1992). The necessary showing may be made through “[inferential evidence” that the defendant “knew the origins and ownership” of the stolen item. Id.
¶31. While there was evidence that Ladd exerted some dominion or control over the vehicle through the act of loading Brown’s lawn equipment into the back of the truck, the State failed to present any evidence, direct or inferential, that Ladd was aware that the truck itself was stolen. The State acknowledged during oral argument before this Court that the basis for this conviction was “weak.” The *1118 only evidence linking Ladd to the stolen truck is Brown’s testimony that each time she saw the two men in the truck, Ladd was a passenger. The keys were in the truck when it was stolen; therefore, Stuart likely used a key to turn on the ignition whenever Ladd was in the vehicle. The record does not disclose how long Ladd knew Stuart or whether he would have known that the truck was not Stuart’s property.
¶ 32. Ladd’s status as a mere passenger in the stolen vehicle is not sufficient to prove, beyond a reasonable doubt, that Ladd intentionally possessed, received, retained or disposed of the truck “knowing that it ha[d] been stolen or having reasonable grounds to believe it ha[d] been stolen!.]” Further, the fact that Stuart evaded police while driving the truck does not imply that Ladd knew the truck was stolen. In both instances, there were stolen goods in the truck; so there was nothing in the evasions from which a jury might infer that Ladd knew the truck was stolen. Accordingly, we reverse and render Ladd’s conviction for Count IV, receiving stolen property, as the evidence is insufficient to support the verdict.
¶ 33. THE JUDGMENT OF THE DE-SOTO COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, CONSPIRACY TO COMMIT GRAND LARCENY, AND SENTENCE OF FIVE YEARS AS A HABITUAL OFFENDER; AND COUNT III, GRAND LARCENY, AND SENTENCE OF TEN YEARS, WITH THE SENTENCES TO RUN CONCURRENTLY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY $1,000 TO THE MISSISSIPPI CRIME VICTIMS’ COMPENSATION FUND AND $800 IN RESTITUTION TO THE VICTIM, IS AFFIRMED. THE CONVICTION OF COUNT II, BURGLARY OF A DWELLING, AND SENTENCE OF TWENTY-FIVE YEARS IS REVERSED, AND THIS CASE IS REMANDED FOR SENTENCING FOR TRESPASS. THE CONVICTION OF COUNT IV, RECEIVING STOLEN PROPERTY, IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
LEE, C.J., ISHEE, RUSSELL AND FAIR, JJ., CONCUR. IRVING, P.J., AND MAXWELL, J., CONCUR IN PART AND DISSENT IN PART WITHOUT SEPARATE WRITTEN OPINION. ROBERTS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS, P.J., AND CARLTON, J.; MAXWELL, J., JOINS THIS OPINION IN PART.

. According to Brown and the investigator, the photograph accurately reflected the way Brown’s house looked on the day of the burglary.

. As aptly noted by the New Mexico Court of Appeals in State v. Sorrelhorse, 150 N.M. 536, 263 P.3d 313, 318 (¶ 19) (N.M.Ct.App.2011): "[T]he breaking element require[s] some aspect of force in order to distinguish it from the element of entering[.]’’

. At oral argument, this Court asked the State whether it was aware of any authority from any other jurisdiction which supported our holding in Chaney; the State replied in the negative.

. To the extent that our holding in Brown relied on Chaney, it, too, is overruled. In Brown, the investigator, Randy Blakely, testified that Brown stated the door was "already open.” Brown, 48 So.3d at 616 (¶ 5). We concluded that it was “unclear if [the testimony] meant the door was unlocked or standing open,” as an evidentiary photograph obtained from security cameras appeared to show Brown opening the porch door. Id. at (¶¶ 8-9). We found the distinction of whether the door was open or whether Brown opened the door, to be irrelevant as both constituted a "breaking,” relying on Chaney and Moore v. State, 933 So.2d 910, 922 (¶41) (Miss.2006) (defendant’s walking through an unlocked door is considered a "breaking”). Id. at (¶ 9).