CARLTON, J„
for the Court:
¶ 1. A DeSoto County grand jury indicted Steven Edmonds on the following charges: conspiracy to manufacture methamphetamine (Count I) and manufacture of a controlled substance (Count II). Following a jury trial on January 23, 2012, Edmonds was convicted of the conspiracy in Count I. The trial court sentenced him to serve fifteen years in the custody of the Mississippi Department of Corrections (MDOC), with five years of post-release supervision. The trial court also ordered Edmonds to pay a fine of $5,000. Ed-monds now appeals, claiming that the State failed to prove the essential elements of the crime charged in the indictment and that the jury’s verdict is against the overwhelming weight of the evidence.
¶ 2. Since the jury convicted Edmonds of conspiracy to manufacture methamphetamine, as set forth in Count I of the indictment, we focus our appellate review upon this offense.
FACTS
¶ 3. DeSoto County Sheriffs Department Investigator Danny Wilkey testified that on January 28, 2010, he worked surveillance on Apartment 7B of the Azalea Ridge Apartments in Walls, Mississippi, based on information the sheriffs department received about a possible methamphetamine lab at that location. During the surveillance, Investigator Wilkey, along with Lieutenant Jason Mitchell and Agent Joseph Force, observed Edmonds walk out of the apartment to a white truck. When the officers approached Edmonds, they immediately smelled a strong chemical odor on Edmonds’s body.
¶ 4. Edmonds informed the officers that other people were inside the apartment, and the officers walked to the door of the apartment, which was still open. Through the open door, the officers smelled a strong, chemical odor and observed items related to the manufacture of methamphetamine, including lighter fluid, aluminum foil, and coffee filters. The officers entered the apartment, and found Tracey Cayer and Christopher Albritton asleep in a bed in one of the bedrooms. Concerned about contamination of the apartment due to the manufacturing process of the methamphetamine, the officers took Cayer and Albritton out of the apartment and brought them to the hospital for decontamination.
¶ 5. In the bedroom, Investigator Wilkey noticed an open duffle bag containing various items. Based on their observations inside of the apartment, the officers removed everyone from the apartment, secured it, and obtained a search warrant, which included permission to search Ed-monds’s truck and Albritton’s truck.
¶ 6. A further search of the bedroom revealed a white plastic container with 156 dosage units of pseudoephedrine, the main ingredient for making methamphetamine. In the duffle bag, the officers also found a coffee maker than had been cut in half to make a hot plate, along with bottles that had some sort of residue in them, digital scales, gloves, baggies, and a hair dryer. Investigator Wilkey testified that these items are used to manufacture methamphetamine. Edmonds admitted that the duffle bag belonged to him. The bedroom also contained a pressurized container marked “oxygen,” and more coffee filters. The officers searched Cayer’s purse and found lithium batteries and pills, including one red pill matching the pseudoephedrine found in the white container in the bedroom.
¶ 7. Edmonds’s truck contained a black garbage bag in which the officers found *101 funnels, hydrogen peroxide, salt, a bottle containing ammonium nitrate, a bottle containing a petroleum productysolvent, sulfuric acid, and coffee filters — all of which are critical to the manufacturing of methamphetamine. The officers also found a pressurized container wrapped in electrical tape. In Albritton’s truck, Investigator Wilkey found a receipt for pseudoephed-rine from Walgreens in Hernando, Mississippi.
¶ 8. When questioned, Edmonds stated that no methamphetamine lab existed in the apartment, but he did admit that the apartment contained items that could be used to make methamphetamine. Ed-monds testified that the items in the apartment belonged to him, and he admitted that he went by the apartment that morning to pick up the ingredients and tools to go to a house in Horn Lake, Mississippi, to cook the methamphetamine. When he arrived at the apartment^ Edmonds testified that Gayer and Albritton were asleep in the bed, and that neither Cayer nor Albrit-ton knew that Edmonds would be at the apartment that day. Edmonds explained that he had stayed in that apartment before, and he stored his items there. Ed-monds claimed that he did not know that Cayer’s purse contained pseudoephedrine and batteries, or that Albritton had been gathering pseudoephedrine pills.
¶ 9. A jury trial was held on January 23, 2012. At the close of the State’s case, Edmonds made a motion for a directed verdict regarding Count II of the indictment, manufacturing methamphetamine, which the trial court granted. Edmonds made a separate motion for a directed verdict regarding Count I, conspiracy to manufacture methamphetamine, which the trial court denied. The jury ultimately convicted Edmonds of conspiracy .to manufacture methamphetamine. The trial court sentenced him to fifteen years in the custody of the MDOC, with five years of post-release supervision. The trial court also ordered Edmonds to pay a fine of $5,000.
1Í10. Edmonds now appeals, arguing that the State failed to prove the essential elements of the crime charged in the indictment and that the jury’s verdict is against the overwhelming weight of the evidence. Finding no error, we affirm.
STANDARD OF REVIEW
¶ 11. In Jerninghan v. State, 910 So.2d 748, 751 (¶ 6) (Miss.Ct.App.2005), this Court recognized that
[mjotions for directed verdict and judgment notwithstanding the verdict ... challenge the legal sufficiency of the evidence presented at trial, and the standard of review for the denial of each is the same. The standard of review is as follows: all evidence supporting a guilty verdict is accepted as true, and the prosecution must be given the benefit of all reasonable inferences that can be reasonably drawn from the evidence.
(Internal citations omitted).
¶ 12. The Mississippi Supreme Court has clarified that once the jury has returned a guilty verdict, neither - the trial court nor appellate court is at liberty to direct that the defendant be found not guilty unless, viewed in the light most favorable to the verdict, “no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty.” Conners v. State, 822 So.2d 290, 293 (¶ 6) (Miss.Ct.App.2001).
¶ 13. A motion for a new trial goes to the weight of the evidence. Woodard v. State, 765 So.2d 573, 576 (¶ 16) (Miss.Ct.App,2000). When determining whether the verdict was against the overwhelming weight of the evidence, we view all evidence in the light most favorable to the jury verdict, and we will not overturn the verdict unless we find that the trial *102 court abused its discretion when it denied the motion. Id. (citations omitted). Additionally, “the decision of whether or not to grant a motion for a new trial rests in the sound discretion of the trial judge,” and the motion “should only be granted when the judge is certain that the verdict is so contrary to the overwhelming weight of the evidence that failure to grant the motion would result in an unconscionable injustice.” Id. Utilizing this standard of review, we review the weight of the evidence in this case with respect to the convicted offense of conspiracy to manufacture methamphetamine of which Edmonds was convicted.
DISCUSSION
¶ 14. Edmonds challenges the sufficiency of the evidence against him and asserts that the trial court erred by failing to grant his motion for a directed verdict on the conspiracy charge. Edmonds claims that the State failed to present sufficient evidence that he conspired with Cayer and Albritton to manufacture methamphetamine.
¶ 15. Mississippi Code Annotated section 97 — 1—1 (l)(a) (Supp.2012) defines conspiracy as “two ... or more persons conspiring] ... [t]o commit a crime.” The supreme court has established that “[a] conspiracy is a completed offense, requiring proof of no overt act done in pursuance thereof.” Ford v. State, 546 So.2d 686, 688 (Miss.1989) (citations omitted). Conspiracy requires the “union of the minds” of the conspirators. Flanagan v. State, 605 So.2d 753, 757 (Miss.1992) (quoting Moore v. State, 290 So.2d 603, 604 (Miss.1974)). Each conspirator “must intend a common plan and know its common purpose.” Ford, 546 So.2d at 688 (citing McCray v. State, 486 So.2d 1247, 1251 (Miss.1986)). The agreement to commit the criminal act “need not be formal or express, but may be inferred from the circumstances, particularly by declarations, acts, and conduct of the alleged conspirators.” Id.; see Ladd v. State, 87 So.3d 1108, 1113 (¶ 13) (Miss.Ct.App.2012).
¶ 16. Here, Edmonds claims that the State presented no proof of a “union of the minds” between Edmonds, Cayer, and Albritton. Edmonds asserts that the only evidence that they acted in concert to manufacture methamphetamine was their presence in the apartment. When reviewing the legal sufficiency of evidence, we must consider the evidence “in the light most favorable to the prosecution.” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quotation omitted). If “the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed,’ ” the appellate court will uphold the verdict. Id. .(quotation omitted). However, where the evidence “ ‘point[s] in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could, not have found beyond a reasonable doubt that the defendant was guilty,’ the proper remedy is for the appellate court to reverse and render.” Id. (citing Edwards v. State, 469 So.2d 68, 70 (Miss.1985)).
¶ 17. Edmonds admitted at trial that he intended to cook methamphetamine and that he gathered the pseudoephedrine pills from other people who use methamphetamine. The State argues that a reasonable inference arises that Edmonds had entered into a conspiracy — whether formal or express, or inferred from circumstances, declarations, acts, or conduct— with Cayer and Albritton to manufacture methamphetamine. See Ford, 546 So.2d at 688 (citation omitted). The record reflects that the officers found Cayer and Albritton in the apartment with Edmonds on January 8, 2010. Testimony at trial revealed that Albritton had previously asked Brandy Young to purchase pseudoephedrine for *103 him on various occasions. The officers also found equipment and supplies used to manufacture methamphetamine in the bedroom where Cayer and Albritton were sleeping. As a result, the State submits that sufficient evidence exists such that a reasonable juror could have found that Edmonds conspired with Albritton and Cayer to manufacture methamphetamine.
¶ 18. Alternatively, Edmonds also argues that his conviction is against the overwhelming weight of the evidence, and thus the trial court erred in denying his motion for a new trial. He submits that if this Court finds that the State presented sufficient evidence for a jury to consider his guilt of conspiracy to manufacture methamphetamine, then the verdict should not stand because the evidence weighs in his favor.
¶ 19. When determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence that supports the verdict. We will reverse only when convinced that the trial court has abused its discretion in failing to grant a new trial, and allowing the verdict to stand would sanction an unconscionable injustice. Montana v. State, 822 So.2d 954, 967-68 (¶ 61) (Miss.2002).
¶20. Although Edmonds admitted to possessing the precursers to make methamphetamine, he denies any agreement or plan to cook methamphetamine with Cayer and Albritton. Edmonds claims that the State’s evidence at trial did not effectively rebut his testimony that he acted alone. However, the State again references the relevant facts presented to the jury regarding evidence of a conspiracy between Edmonds, Albritton, and Cayer. In the bedroom where Cayer and Albritton were sleeping, the police officers. found: 156 dosage units of pseudoephedrine; a duffle bag, which Edmonds claimed belonged to him, containing a coffee pot cut in half to make a hot plate, digital scales, gloves, baggies, and a hair dryer; and a pressurized oxygen container. Cayer’s purse contained lithium batteries and pills, including one red pill matching the pseudoephedrine found in .the bedroom. In Albritton’s truck, the police officers found a receipt for the purchase of pseudoephedrine, and Young testified at trial that she had previously bought pseudoephedrine for Albrit-ton. Edmonds also admitted that he had intended to manufacture methamphetamine.
¶ 21. After reviewing the record, and in viewing the evidence presented at trial in the light most favorable to the verdict, we find that the verdict is not against the overwhelming weight of the evidence. See Woodard, 765 So.2d at 576 (¶ 16). Additionally, we find that sufficient evidence existed to support Edmonds’s conviction for conspiracy to manufacture methamphetamine. See Jerninghan, 910 So.2d at 751 (¶ 6). Accordingly, we affirm the judgment of the trial court.
¶ 22. THE JUDGMENT OF THE DE-SOTO COUNTY CIRCUIT COURT OF CONVICTION OF CONSPIRACY TO MANUFACTURE METHAMPHETAMINE AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS OF POST-RELEASE SUPERVISION, AND TO PAY A $5,000 FINE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR.